**Robert T. O'DONNELL and William K. Brown, Plaintiffs,**

v.

**Greg ABBOTT, Attorney General for the State of Texas, Defendant.**

**No. A–03–CA–902–LY.**

United States District Court,
W.D. Texas,
Austin Division.

Sept. 30, 2005.

Frank M. Reilly, Potts & Reilly, L.L.P., Michelle A. McFaddin, Michelle A. McFaddin, J.D., Austin, TX, for Robert T. O'Donnell, William K. Brown, plaintiffs.

James Carlton Todd, Office of the Attorney General, State of Texas, Austin, TX, for Greg Abbott, Texas Atty. General, defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

YEAKEL, District Judge.

On November 12, 2004, the Court called the above-styled case for trial. Plaintiffs Robert T. O'Donnell and William K. Brown appeared in person and by counsel. Defendant Greg Abbott, Attorney General

for the State of Texas (the "Attorney General"), appeared through his designated representative and by counsel. The case was tried to the bench.

In the spring of 2005 the 79th Texas Legislature passed and the Governor signed two bills that potentially could affect this action: (1) House Bill 1238 is "AN ACT relating to distribution of certain child support payments by the state disbursement unit,[1] and (2) House Bill 2668 is AN ACT relating to the performance by a private entity of the functions of a local child support registry."[2] The Court requested the parties to submit additional briefing regarding the potential effect of the legislation on this action. O'Donnell and Brown submitted a SUPPLEMENTAL BRIEF on August 3, 2005 (Doc. # 74), and the Attorney General filed a SUPPLEMENTAL REPLY BRIEF on August 10, 2005 (Doc. # 75). Likewise, the Attorney General filed a SUPPLEMENTAL BRIEF on August 1, 2005 (Doc. # 73), and O'Donnell and Brown submitted a REPLY BRIEF on August 10, 2005 (Doc. # 76). On August 23, 2005, the Court heard argument on the issue.

Having carefully considered the evidence presented both at trial and during the subsequent hearing, the additional briefing of the parties, and applicable law, the Court concludes that the Attorney General has not violated any federal or state law. In so deciding, the Court makes the following findings of fact and conclusions of law, ultimately concluding that O'Donnell and Brown should take nothing against the Attorney General.[3]

## I. Procedural History and Jurisdiction

O'Donnell and Brown originally filed suit in state district court in Travis County, Texas. The Attorney General removed the action to this Court. *See* 28 U.S.C. § 1441. This Court has jurisdiction of the controversy because it presents a federal question. *See* 28 U.S.C. § 1331. The Court also exercises supplemental jurisdiction over O'Donnell and Brown's state-law claims. *See* 28 U.S.C. § 1367.

## II. Discussion and Analysis

O'Donnell and Brown own and operate a business called "Guardian Ad Litem" ("GAL"), which collects and disburses child-support payments for its clients, beneficiaries of state child-support orders.[4] GAL established its client base by being appointed guardian *ad litem* by state district courts in Dallas and Collin Counties, Texas in divorce and child-support cases. *See* Tex.R. Civ. P. 173 (authority for appointment of guardians *ad litem*); Tex. Fam.Code Ann. § 107.001(5) (West Supp. 2004—2005) (definition of guardian *ad litem*). GAL charges its clients $10 per month for its services. For its fee, GAL collects child-support payments from the noncustodial parent and sends the payment to the custodial parent. GAL also

---

1. Act of May 25, 2005, 79th Leg., R.S. ch. 1232, Tex. Sess. Law Serv. 3984 (West) (effective Sept. 1, 2005) (to be codified as an amendment to the Tex. Fam.Code Ann. § 234.008). The Court will refer to this bill in the opinion as "HB 1238."

2. Act of May 29, 2005, 79th Leg., R.S., ch. 740, Tex. Sess. Law Serv. 2557 (West) (effective June 17, 2005) (to be codified as an amendment to Tex. Fam.Code Ann. §§ 154.241, 204.001). The Court will refer to this bill in the opinion as "HB 2668."

3. Throughout this opinion, all findings of fact that are more appropriately considered conclusions of law are so deemed. Likewise, any conclusion of law that is more appropriately considered a finding of fact is so deemed.

4. Throughout this opinion, Plaintiffs O'Donnell and Brown will be referred to by their business name, GAL.

keeps records of these payments and, if the noncustodial parent stops remitting the court-ordered child support, immediately files suit to recover the arrearage. This relationship between GAL and its clients is established through divorce decrees or support orders issued by the appointing court. GAL serves over 30,000 clients in this capacity and has achieved an undisputed impressive rate of collection.

As part of a comprehensive restructuring of federal welfare programs, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA").[5] In relevant part, PWRORA provides:

> In order for a State to meet the requirements of this section, the State agency must establish and operate a unit (which shall be known as the "State disbursement unit") for the collection and disbursement of payments under support orders—
>
> (A) in all cases being enforced by the State pursuant to section 654(4) of this title; and
>
> (B) in all cases not being enforced by the State under this part in which the support order is initially issued in the State on or after January 1, 1994, and in which the income of the noncustodial parent is subject to withholding pursuant to section 666(a)(8)(B) of this title.

42 U.S.C. § 654b(a)(1)(A)(B)(2003).

PRWORA further requires that the "State disbursement unit" ("SDU") be "operated directly by the State agency" (*i.e.,* in Texas, the Office of the Attorney General) and:

> The State disbursement unit shall use automated procedures, and computer-driven technology to the maximum extent feasible, efficient, and economical, for the collection and disbursement of support payments, including procedures—(1) for receipt of payments from parents, employers and other States, and for disbursements to custodial parents and other obligees, the State Agency, and the agencies of other State . . . .

42 U.S.C. § 654b(a)(2)(A), (b)(1) (2003).[6]

To qualify for federal funds, a state must certify that it will operate a child support enforcement program that conforms with the numerous requirements set forth in PWRORA. *See e.g., Blessing v. Freestone,* 520 U.S. 329, 333, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

To comply with PRWORA, the Texas Legislature amended the Texas Family Code to mandate that Texas's "Title IV–D agency shall establish and operate a state case registry and state disbursement unit meeting the requirements of 42 U.S.C. Sections 654a(c) and 654b and this subchapter." Tex. Fam.Code Ann. § 234.001(a) (West 2002). The legislature required the SDU to "forward child support payments as authorized by law." Tex. Fam.Code Ann. § 234.001(c)(1) (West 2002). The legislature designated the Attorney General as Texas's Title IV–D agency. *See* Tex. Fam.Code Ann. § 231.001 (West 2002). As such, the Attorney General may adopt rules in compliance

---

**5.** *See* Pub.L. 104–193, Title III, § 312(b), 110 Stat. 2207 (1996). PRWORA amended Title IV–D of the Social Security Act to add sections 651 through 669b. *See* Title IV–D of the Social Security Act of 1935, 49 Stat. 627 (current version as amended 42 U.S.C. §§ 601–679b). Section 654b, titled "Collection and disbursement of support payments," is at issue.

**6.** Subsection (A) refers to the state's collection of child support owed to beneficiaries of the federal welfare program under Title IV of the Social Security Act. GAL does not serve any clients that fall under subsection (A). This case deals only with the class of support orders outlined in subsection (B).

with federal law for the operation of Texas's SDU. *See* Tex. Fam.Code Ann. § 234.006 (West 2002).

At first the Attorney General assured GAL that the amended federal and state laws would not seriously affect GAL's business. The Attorney General indicated that the SDU would collect child-support payments from the noncustodial parent and send the payment to GAL. GAL would then send the payment to the custodial parent. GAL could thus perform all the services that it had performed before the creation of the SDU and could continue collecting its fee.

In 2002 the Attorney General changed his position regarding federal-law requirements. The Attorney General determined that GAL was not an obligee and, thus, could not receive child-support payments from the SDU. The Attorney General sent notices of his new position to the district judges in Collin and Dallas Counties, informing them that "support payments cannot be disbursed to the GAL unless the person entitled to receive support has signed a Release of Information form which authorizes their payments to be sent to the GAL." [7] The Attorney General had concluded that, although he did not consider GAL an obligee under PWRORA, federal law would allow the SDU to send child-support payments to GAL if GAL's clients signed an authorization form indicating that the client wished the SDU to do so. The Attorney General created such an authorization form and instructed GAL that if it wished to receive child-support payments from the SDU, GAL would have to use the form to gain authorization from it clients.

GAL filed this action against the Attorney General, alleging that the Attorney General has misinterpreted PWRORA. Specifically, GAL argues that federal law allows the SDU to send payments to GAL because it is an obligee within the meaning of PWRORA. GAL further argues that even if it is not an obligee under PWRORA, it has authorization to receive the child-support payments pursuant to the divorce decrees voluntarily entered into by its clients. Finally, GAL contends that the Attorney General's actions have: (1) violated the rulemaking provisions of the Texas Administrative Procedure Act ("APA"); [8] (2) deprived GAL of property and liberty interests without due process of law; [9] (3) subjected GAL to an unconstitutional taking and an unconstitutional seizure of private property; [10] (4) impaired GAL's contracts in violation of the Texas Constitution; [11] (5) acted retroactively in violation of the Texas Constitution; [12] and (6) violated the doctrine of separation of powers. [13]

The parties agree that the primary issue underlying this case is whether the term "obligee," as used in PRWORA, includes entities like GAL. *See* 42 U.S.C. § 654b(b)(1). Both GAL and the Attorney General point to Texas Family Code definitions of obligee to support their respective claims. GAL relies on section 101.021 of the Texas Family Code, which defines obligee as "a person or entity entitled to

---

7. *See* correspondence from Deputy Attorney General for Child Support to Judge Craig Fowler, dated January, 27, 2002.

8. *See* Tex. Gov.Code Ann. §§ 2001.021–.041 (West 2000 & Supp.2004—2005).

9. *See* Tex. Const. art. I § 19.

10. *See* Tex. Const. art. I § 17.

11. *See* Tex. Const. art. I §§ 10, 16.

12. *See* Tex. Const. art. I §§ 9, 10, 16 (retroactive application and seizure *ex post facto* ).

13. *See* Tex. Const. art. 2 § 1.

receive payments of child support, including an agency ... to which a person has assigned the person's right to support." Tex. Fam.Code Ann. § 101.021 (West 2002).

In contrast, the Attorney General points to Chapter 159 of the Texas Family Code for his definition of obligee. Chapter 159 of the Texas Family Code contains the Texas incorporation of the Uniform Interstate Family Support Act (hereinafter referred to as "UIFSA").[14] *See* Tex. Fam. Code Ann. §§ 159.101–.901 (West Supp. 2004—2005). Under section 159.102(12), obligee means:

(A) an individual to whom a duty of support is or is alleged to be owed or in whose favor a support order has been issued or a judgment determining parentage has been rendered;

(B) a state or political subdivision to which the rights under a duty of support or support order have been assigned or that has independent claims based on financial assistance provided to an individual obligee; or

(C) an individual seeking a judgment determining parentage of the individual's child.

Tex. Fam.Code Ann. § 159.102(12) (West Supp 2004—2005).

The issue before this Court, however, is whether the Attorney General has misinterpreted the meaning of a federal statute. Thus, the Court must determine the meaning of obligee within PRWORA, not the meaning of obligee according to the Texas Legislature.[15] In so doing, the Court is guided by the "fundamental canon of statutory construction that the words of a statute must be read in their context and with an eye to their place within the overall statutory scheme." *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891, (1989) (quoted in *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)).

Although PRWORA itself does not contain a definition of obligee, UIFSA, which PRWORA references and mandates that States adopt, does. *See* 42 U.S.C. § 666(f) (2003). ("On or after January 1, 1998, each State must have in effect [UIFSA]."). In the absence of a definition of obligee within PRWORA itself, the Court finds it logical to use the definition provided in an act that is favorably cross-referenced within PRWORA. As enacted in Texas, UIFSA defines obligee as:

(A) an individual to whom a duty of support is or is alleged to be owed or in whose favor a support order has been issued or a judgment determining parentage has been rendered;

(B) a state or political subdivision to which the rights under a duty of support or support order have been assigned or that has independent claims based on

---

**14.** National Conference of Commissioners on Uniform State Laws, Uniform Interstate Family Support Act (2001). UIFSA was promulgated by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association. *See* 42 U.S.C. § 666(f) (2003). The National Conference of Commissioners on Uniform State Laws originally drafted and circulated UIFSA to state legislatures in 1996. UIFSA was amended in 2001. Every state has adopted either the 1996 or 2001 version of the act.

*See* Record of Passage of Uniform and Model Act, as of September 30, 2004, National Conference of Commissioners on Uniform State Laws, 2004–2005 Reference Book.

**15.** This is especially true in this case because the Texas Legislature has instructed that the Attorney General "shall establish and operate a state ... disbursement unit meeting the requirements of 42 U.S.C. [§ ] 654(b) ...." Tex. Fam.Code Ann. § 234.001(a)(West 2002).

financial assistance provided to an individual obligee; or

(C) an individual seeking a judgment determining parentage of the individual's child.

Tex. Fam.Code Ann. § 159.102(12).[16]

■ The Attorney General argues that GAL cannot be an obligee because a *duty of support* is never owed GAL. The Attorney General asserts that only the child and, as the child's guardian, the custodial parent, is owed the *duty of support.* The Attorney General's view is supported by commentary discussing UIFSA, other statutory references within UIFSA, as well as interpretations of PRWORA issued by the federal Office of Child Support Enforcement. For instance, the National Conference of Commissioners of Uniform State Laws' comments to UIFSA explain:

> The term "obligee" in Subsection (12) is defined in a broad manner ... which is consistent with common usage. In instances of spousal support, the person owed the duty of support and the person receiving the payments are almost always the same. Use of the term is more complicated in the context of a child support order. The child is the person to whom the duty of support is owed, and therefore can be viewed as the ultimate obligee. However, "obligee" usually refers to the individual receiving the payments. While this is most commonly the custodial parent or other legal custodian, the "obligee" may be a support enforcement agency that has been assigned the right to receive support payments in order to recoup Temporary Assistance for Needy Families .... The

Act also uses "obligee" to identify an individual who is asserting a claim for support, not just for a person whose right to support is unquestioned, presumed, or has been established.

UIFSA (Comment) § 101. Although the comment states that UIFSA defines obligee in a broad manner, it is clear that obligees are only individuals or entities that have a right to the proceeds of the child-support payment, not a collection or forwarding agent like GAL.

Likewise, the federal Office of Child Support Enforcement's interpretation of obligee under PWRORA excludes GAL. The Attorney General specifically asked the Office of Child Support Enforcement whether the term obligee as used in PWRORA extended to GAL. In response, the Office of Child Support Enforcement stated: "No. The term obligee does not extend to the Guardian ad Litem." [17] The Court recognizes that "interpretations contained in formats such as opinion letters are 'entitled to respect'" but "only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). As such, the Court simply considers the letter support for its conclusion that GAL is not an obligee under PWRORA, rather than determinative of the issue.

The Court is further persuaded that GAL is not an obligee under PWRORA because such an interpretation would result in a nonsensical construction. The Texas Family Code's enactment of UIFSA

---

**16.** Texas has adopted UIFSA's definition of obligee without material change. *Compare* Tex. Fam.Code Ann. § 159.102(12) *with* UIFSA § 101(12).

**17.** *See* Correspondence from James Travis, Regional Program Manager for Regional Office VI of the Administration For Children and Families, to Barry McBee, First Assistant Attorney General for the Office of the Texas Attorney General, dated December 19, 2003.

outlines three categories of obligee: the individual obligee who is owed a duty of support, a public entity who is owed a duty of support, or an individual seeking a determination of parentage. *See* Tex. Fam. Code Ann. § 159.102(12). The only possible category of obligee that GAL even arguably satisfies is the first—individual obligee. Section 159.205 of the Texas Family Code, which addresses a court's jurisdiction to modify child support orders, speaks to only the first category—the individual obligee who is owed a duty of support. *See* Tex. Fam.Code Ann. § 159.205 (West Supp.2005) ("At the time a request for modification is filed, this state is the state of residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued."). If GAL could legitimately be considered an obligee, it would indicate that in the event that GAL were to move to a different jurisdiction that move would alter the continuing, exclusive jurisdiction of the court issuing the child-support order.

The Court's review of the relationship between PRWORA and UIFSA and the meaning of obligee within UIFSA lead the Court to conclude that obligee in PRWORA does not include entities like GAL—entities that do not possess a right to the child support itself. Thus, the Court concludes that GAL is not an obligee under PWRORA.

■ GAL argues that even if it is not an obligee under PWRORA—as the Court has concluded—GAL should nevertheless receive child-support payments from the SDU because it has obtained consent from its clients, through divorce decrees, to do so. GAL asserts that the Attorney General is overstepping his authority by requiring a specific form because federal law does not specifically require authorization in any particular form. The Attorney General responds that GAL may legally receive payments in the name of the custodial parent from the SDU if GAL collects authorizations from its clients using the Attorney General's forms. To support his position, the Attorney General relies on the power granted him under section 234.006 of the Texas Family Code to adopt rules in compliance with federal law for the operation of Texas's SDU. *See* Tex. Fam.Code Ann. § 234.006. Thus, the Court must determine whether the authorization forms the Attorney General has required are legally necessary or whether the divorce decrees themselves may serve as the authorization for collection of the child-support payments under PWRORA.

GAL contends that the divorce decrees are consent decrees and, within those consent decrees, the parents have chosen to use GAL as the mechanism through which their child-support arrangement is processed. Thus, GAL argues the Attorney General already has the authorization he needs. A close examination of the orders themselves, however, leads the Court to conclude that the divorce decrees do not evidence actual, operating consent by the parties to the GAL arrangement.

At trial the Attorney General presented the Minute Order issued jointly by the 199th, 296th, and 219th Judicial District Courts of Collin County that provides for the appointment of GAL in divorce and child-support cases. The Order reads: "whereas, *optional participation by the obligee in the improvement of child support collection program thwarts its purpose* .... It is [ ] Ordered that Robert Thomas O'Donnell be and hereby is appointed Guardian ad Litem for the purpose of enforcing all child support decrees and orders rendered on or after the effective date of the local rules governing ...." (Emphasis added.) With respect to the divorce decrees issued by Collin County district judges, the parties did not effec-

tively consent to the engagement of GAL in their child-support arrangements. The Court finds that GAL has not proved consent.

In sum, the Court concludes that GAL has failed to prove that the Attorney General has violated any state or federal law by requiring GAL to gain authorization from its clients through specific forms to receive child-support payments from the SDU.

■ Because GAL performs its appointment at the pleasure of the district court, this Court concludes that GAL had no vested interest in the appointments. Thus, GAL's claims based on the presumption that the continuation of GAL's appointments is a vested right must fail.[18] *See e.g., City of Amarillo v. Hancock,* 150 Tex. 231, 239 S.W.2d 788, 792 (1951) (for plaintiff to come under protection of due process, right adversely affected must be vested property right); *City of Houston v. Northwood Mun. Dist. No. 1,* 73 S.W.3d 304, 313 (Tex.App.—Houston [1st Dist.] 2001, pet. denied) (to establish standing for a constitutional takings claim, plaintiff must have vested property rights); *Rylander v. Palais Royal, Inc.,* 81 S.W.3d 909, 915 (Tex.App.—Austin 2002, pet. denied) ("Retroactive application of a law is unconstitutional if it destroys or impairs a vested right."). The Court will, therefore, deny GAL's claims that the Attorney General deprived it of property and liberty interests without due process of law, subjected it to an unconstitutional taking or unconstitutional seizure of private property, acted retroactively in violation of the Texas Constitution, and impaired its contracts in violation of the Texas Constitution.

■ GAL also contends that the Attorney General violated the rulemaking provisions of the Texas APA by requiring GAL to use the proposed authorization forms. Because the Court has concluded that GAL has no vested right in the continuation of its relationship with its clients, it is not clear that GAL has standing to challenge the Attorney General's requirement that GAL use prescribed authorization forms. Regardless, as the Attorney General points out, the Texas Legislature has specifically stated that the Attorney General *may* adopt rules in compliance with federal law for the operation of the state disbursement unit. *See* Tex. Fam.Code Ann. § 234.006 (emphasis added). Thus, the legislature left the decision whether to formally adopt rules regarding its operation of the Texas SDU to the discretion of the Attorney General.

Since the legislature has expressly granted the Attorney General discretion regarding whether to promulgate rules in this area, the Court concludes that the Attorney General has not violated the rulemaking provisions of APA.

■ Several of GAL's other claims depend on its contention that the divorce decrees serve as contracts between GAL and its clients. However, because the Court has determined that the parent clients did not consent to the arrangement, but were, in practical terms, ordered to accept the arrangement, the Court will not find that the divorce decrees operate as contracts. *See Copeland v. Alsobrook,* 3 S.W.3d 598, 604 (Tex.App.—San Antonio 1999, pet. denied) (under Texas law, a valid contract requires each party's consent to

---

**18.** The Court exercises supplemental jurisdiction over GAL's state-law claims. *See* 28 U.S.C. § 1367. To determine state law questions, federal courts look to controlling state law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.,* 193 F.3d 340, 342 (5th Cir.1999) (Texas law).

the terms). The Court's conclusion is substantiated by the Minute Order itself which states: "It Is Further And Finally Ordered that the Guardian ad litem herein appointed, and his successors, shall serve at the pleasure of the District Judges of Collin County, Texas, and shall have no proprietary interest in and to this appointment."

The Court also concludes that GAL's claim that the Attorney General violated the separation of powers doctrine by making "material and ad hoc changes" to court orders is unfounded. Again, the nature of the decrees themselves bears greatly on the Court's determination of this issue. The orders provide that GAL is to process child-support distribution from the date of the decree until the date the child may no longer receive child support. After many of the orders were issued, however, Congress and the Texas Legislature enacted new laws that rendered the arrangement outlined in the orders unworkable. PWRORA and the Texas Family Code now require child-support payments to be transferred from the obligor (noncustodial parent) to the SDU to the obligee (custodial parent). As the Supreme Court has stated, "when Congress changes the law underlying a judgment awarding prospective relief, that relief is no longer enforceable to the extent it is inconsistent with the new law." *Miller v. French,* 530 U.S. 327, 347, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000).

After determining that the arrangement set forth in the district-court orders at issue no longer conformed to federal and state law, the Attorney General, who is specifically charged with operating the SDU in accordance with federal law, required the child-support payments of GAL's clients to be transferred from obligor to the SDU to the obligee, and not to GAL. It is important to note that, by these actions, the Attorney General is not reopening the final divorce decrees to redetermine the rights of the parties. For instance, the Attorney General is not altering the property division between the parties. He is only altering the prospective or ongoing implications of the court orders as to a third entity, GAL.

The Texas Legislature has redefined the legal mechanism for the distribution of child-support payments in Texas. The child-support disbursement element of the orders at issue is, in practical terms, prospective in nature and is thus properly modified by the legislature's subsequent determinations. The Court concludes that there are no separation-of-power issues precluding the Attorney General's actions in this case.

Finally, the Court concludes that the recently passed legislation does not affect the outcome of this action. HB 1238, *inter alia,* amended section 234.008 of the Texas Family Code by adding subsections (d) and (e):

> (d) Subject to Subsection (e), the signature of an obligee on a final order in a suit affecting the parent-child relationship, or another order under this title, that designates an individual or entity for the purpose of receiving, disbursing, and monitoring child support payments constitutes written consent by the obligee to the distribution of the child support payments by the state disbursement unit to the designated individual or entity. The state disbursement unit shall distribute each child support payment to the designated individual or entity by the date required by Subsection (a). The designated individual or entity shall deduct any amount of the individual's or entity's authorized fee from the payment and promptly disburse the remainder of the amount to the Title IV–D agency or obligee.

(e) If the Title IV–D agency is notified by the Federal Office of Child Support Enforcement that Subsection (d) results in the Title IV–D agency's failure to meet the requirements of 42 U.S.C. Sections 654a(e) and 654b related to the establishment and operation of the state case registry and state disbursement unit, Subsection (d) is null and void and the Title IV–D agency shall publish in the Texas Register notice that Subsection (d) is not effective.[19]

HB 2668, *inter alia,* amended section 145.241 of the Family Code by adding Subsection (g):

(g) Notwithstanding any other law, a private entity may perform the duties and functions of a local registry under this section either under a contract with a county commissioners court or domestic relations office executed under Section 204.002 or under an appointment by a court.[20]

GAL argues that, taken together, the bills identify GAL as a local registry that can receive and disburse child support payments in accordance with state law and provide that the signature of a parent on a divorce decree constitutes valid consent by that parent to GAL's receipt of that obligee's child-support payments. Even assuming GAL's interpretation of the legislation is correct, the Court finds this to be a change in the law as it existed at the time of the parties' current dispute. It is this Court's responsibility to apply the law as it existed at the time of the parties' dispute, unless the Texas Legislature, in passing new legislation, expressly states its intent that the new legislation is to be applied retroactively. *See* Tex. Gov't Code Ann. § 311.022 (West 2005) ("Statutes are presumed to be prospective in operation unless expressly made retrospective."). The Court finds no such legislative intent. Moreover, the parties agreed during argument that HB 1238 and HB 2668 have prospective, rather than retroactive, application. Thus, this legislation does not alter or affect the outcome of this action.

### III. Conclusion

In accordance with the foregoing, the Court **ORDERS** that Plaintiffs Robert T. O'Donnell and William K. Brown **TAKE NOTHING** against Defendant Greg Abbott, Attorney General for the State of Texas.

It is further **ORDERED** that Defendant Greg Abbott, Attorney General for the State of Texas, recover his costs in defending this action.

It is finally **ORDERED** that all other relief requested is **DENIED**.

---

19. *Supra,* note 1.

20. *Supra,* note 2.