# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00224-CV

**Carole Keeton Rylander, Successor-In-Interest to John Sharp, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Successor-In-Interest to Dan Morales, Attorney General of the State of Texas, Appellants**

**v.**

**Palais Royal, Inc. and 3 Beall Brothers 3, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. 96-03719, HONORABLE PAUL DAVIS, JUDGE PRESIDING

Appellants Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas, and John Cornyn, Attorney General of the State of Texas,[1] appeal from a summary judgment in favor of appellees Palais Royal, Inc. and 3 Beall Brothers 3, Inc. (together ABealls@), arising from a tax-protest suit. *See* Tex. Tax Code Ann. ' 112.052 (West 2001).[2] The district court found the implementation of the earned-surplus amendments to the franchise tax act unconstitutional and ordered the Comptroller to refund

---

[1] The comptroller and attorney general are statutory defendants in tax-protest suits. *See* Tex. Tax Code Ann. ' 112.151(b) (West 2001). Their interests do not diverge. We will therefore refer to them jointly as the AComptroller.@

[2] The parties rely on the 1992 code for this provision as it was the version in effect during the audit period at issue. The amendments to this provision do not materially affect our case; therefore, we cite to the current code for convenience.

franchise taxes paid by Bealls. *See id.* ' 171.002, .110, .152, .1532. The Comptroller appeals. We will reverse and render.

## THE CONTROVERSY

This dispute arises out of Bealls= August 2, 1993 cessation of business in Texas for franchise-tax purposes due to its merger with Palais Royal, Inc. Following the merger, Bealls has continued to operate in Texas under the ABealls@ name but is owned and operated by Palais Royal. This Court has previously considered the application of the portion of the 1991 franchise tax act amendments providing for an Aadditional tax@[3] to the Bealls/Palais Royal merger. *See Rylander v. 3 Beall Brothers 3, Inc.*, 2 S.W.3d 562 (Tex. App.CAustin 1999, pet. denied) (A*Beall Brothers I*@). The 1991 amendments also added a corporation=s earned surplus to the tax base from which to calculate the corporation=s franchise-tax liability. *See* Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, ' 8.03, 1991 Tex. Gen. Laws 153, *amended by* Act of May 30, 1999, 76th Leg., R.S., ch. 394, ' 10, 1999 Tex. Gen. Laws 2454, 2454-55 (current version at Tex. Tax Code Ann. ' 171.002 (West 2001)). In *Beall Brothers I*, we described the Texas franchise-tax scheme appropriate to the circumstances of the current controversy, with citations to applicable authority. *See* 2 S.W.3d at 564-65. In the interest of brevity, we will generally describe here that scheme without citation.

---

[3] *See* Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, ' 8.02, 1991 Tex. Gen. Laws 152*, amended by* Act of May 27, 1993, 73d Leg., R.S., ch. 546, ' 1, 1993 Tex. Gen. Laws 2043 (current version at Tex. Tax Code Ann. ' 171.011 (West 2001)).

The Texas franchise tax is imposed on the value of the privilege of doing business in Texas. The tax is imposed annually on each corporation that is incorporated in Texas or that conducts business in Texas. A corporation=s franchise-tax liability is based on the business done by the corporation during its last accounting period ending in the year before the year in which the corporation=s tax report is due (the Aprivilege period@). The tax is calculated by multiplying the franchise-tax base by the franchise-tax rate.

Before 1992, the franchise-tax base was comprised solely of a corporation=s Ataxable capital.@ Taxable capital included the corporation=s Astated capital@ and Asurplus.@ Stated capital is the sum of the par value of all shares of the corporation having a par value that have been issued plus the consideration fixed by the corporation for all shares without par value that have been issued. Surplus is the corporation=s net assets less its stated capital. Under this plan, capital-intensive industries bore the brunt of the tax, even in unprofitable years. In 1991 the legislature amended the franchise-tax act to establish Aearned surplus@ as the tax base from which to calculate the major portion of a corporation=s franchise tax. Earned surplus is the corporation=s reportable federal net income, less certain foreign-source income, plus officer and director compensation. As applicable here, A[t]he rates of the franchise tax are . . . 0.25 percent per year of privilege period of net taxable capital; and . . . 4.5 percent of net taxable earned surplus.@ Tex. Tax Code Ann. ' 171.002(a) (West 2001).

The amendments were effective January 1, 1992 and Aappl[y] to reports originally due on or after that date.@ Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, art. 8, ' 8.27(a), 1991 Tex. Gen. Laws 134, 167. By its own election, Bealls operated as a fiscal-year taxpayer, as opposed to a calendar-year taxpayer, and utilized a fiscal year ending on the Saturday nearest January 31. Thus, the privilege

period for the franchise-tax report required to be filed by Bealls in 1992 was the period from February 4, 1990 to February 2, 1991, the accounting period that ended in the year before the tax report was due. Because the earned surplus to be included in Bealls= 1992 report was based on federal taxable income earned in the fiscal or calendar year ending on or before December 31, 1991, Bealls= 1992 franchise tax was based on the income reported for the fiscal year ending February 2, 1991, the Saturday nearest January 31, 1991. This resulted in Bealls owing a franchise tax computed on income earned beginning in February 1990, in contrast to calendar-year taxpayers who owed the tax computed on income earned beginning in January 1991.

Simply put, because of its fiscal year, Bealls= first tax report following the 1991 amendments was due May 15, 1992, the report date in the yearC1992Cfollowing the year in which Bealls= accounting period endedCFebruary 2, 1991. Bealls is thus obligated to base its franchise tax due in 1992, in part, on income earned in 1990, since a portion of its fiscal year ending February 2, 1991CFebruary 4, 1990 through December 31, 1990Cprecedes calendar year 1991. A calendar-year taxpayer is only obligated to include 1991 income in its 1992 report because its accounting year ends December 31, 1991.

Bealls paid the tax under protest and filed suit for a refund.[4] *See* Tex. Tax Code Ann. ' 112.052. Both parties filed motions for summary judgment. The district court granted Bealls= motion and

---

[4] The amendments to the franchise tax also included an Aadditional tax,@ which is levied on a corporation that is subject to the franchise tax but is no longer subject to the taxing jurisdiction of the State in relation to the tax on net taxable earned surplus. *See* Tex. Tax Code Ann. ' 171.011. These additional taxes were paid by Bealls when it merged with Palais Royal and ceased doing business in Texas. The tax-protest suit that arose from that tax was previously resolved by this Court and is not before us here. *See Rylander v. 3 Beall Bros. 3, Inc.*, 2 S.W.3d 562 (Tex. App.CAustin 1999, pet. denied); *see also Universal Frozen Foods v. Rylander*, No. 03-01-646-CV, slip op., 2002 WL 990702 (Tex. App.CAustin May 16, 2002,

denied the Comptroller=s, finding that the earned-surplus amendments were unconstitutional as applied to Bealls, and ordered the Comptroller to refund a total of $480,383.80 in tax plus interest assessed on that amount by the Comptroller and statutory interest provided by the tax code. *See id.* ' 112.060. Additionally, the district court found that Bealls was Aentitled to a business-loss carryover of $4,345,079 for the Report Year 1992.@[5] The Comptroller now appeals by three issues.

## STANDARD OF REVIEW

The parties either stipulate to or do not dispute the material facts in this case. Therefore, whether the district court properly granted summary judgment is a question of law, and we will review the district court=s decision *de novo. See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When the parties file competing motions for summary judgment and one is granted and the other denied, the reviewing court should review the summary-judgment evidence presented by both sides and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). The district court=s final judgment states

---

no pet. h.).

[5] The judgment also provided that A[w]ith regard to [Bealls=] constitutional claims concerning officer and director compensation, the Court grants [the Comptroller=s] Motion for Summary Judgment and denies [Bealls=] Motion for Summary Judgment.@ Neither party has appealed this portion of the district-court judgment.

that Bealls= motion for summary judgment was granted on its Aconstitutional claims.@ However, Bealls raised several constitutional claims and the judgment does not specify which the district court found persuasive. Therefore, the Comptroller must attack each claim raised by Bealls in its motion for summary judgment. *See State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 381 (Tex. 1993).

## DISCUSSION

### *Equal Taxation and Equal Protection Claims*

By its first issue, the Comptroller asserts that the district court erred in finding the earned-surplus amendments unconstitutional under equal-taxation and equal-protection-of-law standards because the amendments disproportionately impact fiscal-year taxpayers. We agree. The Texas Constitution requires that taxation be equal and uniform. Tex. Const. art. VIII, ' 1(a). More generally, the United States Constitution requires equal protection of the laws for all persons within a state. U.S. Const. amend. XIV, ' 1. However, tax legislation receives special deference. *See Vinson v. Burgess*, 773 S.W.2d 263, 266 (Tex. 1989). In challenging the constitutionality of the earned-surplus amendments, Bealls bears the burden of establishing the failure of the statute to meet constitutional requirements. *See Enron Corp. v. Spring ISD*, 922 S.W.2d 931, 934 (Tex. 1996). Additionally, because no fundamental right has been affected, the Comptroller need only show that there is a rational, legitimate basis for the amendments. *See Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 631 (Tex. 1996).

Bealls argues that the amendments fail to meet constitutional requirements in that they have a disproportionate impact on fiscal-year taxpayers. The federal constitution does not require equality of

**6**

impact among taxpayers. *See Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966) (holding that Equal Protection Clause does not demand statutes be applied equally to all persons). Similarly, the Texas Constitution has no such requirement. We have previously held that a tax that has a disproportionate impact is not Ainherently unconstitutional so long as the legislation is rationally related to a legitimate governmental goal and the system operates equally within each class.@ *Beall Brothers I*, 2 S.W.3d at 567 (citing *Tandy Corp. v. Sharp*, 872 S.W.2d 814, 818 (Tex. App.CAustin 1994, writ denied)). The Comptroller argues that the tax serves legitimate governmental goals of convenience, reliability, efficiency, and conformity to federal tax periods. Furthermore, the earned-surplus amendments have a uniform starting date, reporting date, tax base, and tax rates. *See* Tex. Tax Code Ann. ' 171.152(c), .1532(b), .110(a), .002(a). All taxpayers were required to pay taxes based on a twelve-month period ending on or before December 31, 1991. Therefore, all taxpayers falling within the class have been treated equally. *See Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 240 (Tex. App.CAustin 1996, writ denied) (citing *Hurt v. Cooper*, 110 S.W.2d 896, 901 (Tex. 1937)). Because we must give special deference to tax statutes and because the goals set forth by the Comptroller advance rational, legitimate governmental interests, we hold that there is no denial of equal taxation or equal protection in the Comptroller=s application of the earned-surplus amendments to Bealls and sustain the Comptroller=s first issue.

### *Retroactivity, Takings and Due Process Claims*

By its second issue, the Comptroller contends that the earned-surplus amendments do not conflict with state or federal retroactivity, takings, or due process provisions. Article I, section 16 of the Texas Constitution provides that A[n]o . . . retroactive law . . . shall be made.@ Tex. Const. art. I, ' 16.

**7**

Retroactive application of a law is unconstitutional if it destroys or impairs a vested right. *Grocers Supply Co. v. Sharp*, 978 S.W.2d 638, 643 (Tex. App.CAustin 1998, pet. denied). Bealls bases its retroactivity claim on the fact that the taxes due for 1992 were based on income earned in 1990, before the effective date of the tax. This is because the earned-surplus computation is tied to adjusted taxable income for federal-income-tax purposes for ease of computation and efficiency. Our decision in *General Dynamics v. Sharp* controls the issue of retroactivity. *See* 919 S.W.2d 861 (Tex. App.CAustin 1996, pet. denied). In that case, the franchise tax was imposed on seven years of income, which was all reported in 1991. We held that Aas long as a tax is levied after its effective date and is levied at least in part for the privilege of doing business during the current year, then it is not a retroactive tax.@ *Id.* at 866. Because the franchise tax in our case was levied against Bealls for the privilege of doing business in 1992, we hold that it was not retroactively applied. Even if we construed the earned-surplus tax to apply retroactively, *General Dynamics* holds that Ano Texas taxpayer has a vested right in the continuation of a particular measurement method for the franchise tax.@ *Id*. at 867 (citing *Smith v. Davis*, 426 S.W.2d 827, 834 (Tex. 1968)).

Bealls argues that the earned-surplus amendments act as an unconstitutional taking as applied to it. Article I, section 17 of the Texas Constitution provides that A[n]o person=s property shall be taken . . . for or applied to public use without adequate compensation.@ Tex. Const. art. I, ' 17. This provision has generally been confined to eminent domain proceedings. *See Friedman v. American Sur. Co.*, 151 S.W.2d 570, 577 (Tex. 1941). Although we recently held that takings-clause claims are not absolutely limited to eminent domain, we do not extend that holding to the facts of this case. *See Texas Workforce Comm=n v. MidFirst Bank*, 40 S.W.3d 690, 697 (Tex. App.CAustin 2001, pet. denied).

**8**

*MidFirst* considered the issue of whether a state agency=s withholding of funds subject to a private party=s perfected security interest constituted a taking. *Id.* at 695-98; *see also County of Burleson v. General Elec Capital Corp.*, 831 S.W.2d 54 (Tex. App.CHouston [14th Dist.] 1992, writ denied) (illegal taking occurred where taxing authority did not follow statutory procedure for foreclosure of tax lien). The State has the authority to levy and collect taxes in a rational and legitimate manner. The exercise of that authority here does not amount to a taking.

Bealls next asserts that imposition of the tax is an illegal taking under the Fifth Amendment to the United States Constitution, which provides: Aprivate property [shall not] be taken for public use, without just compensation.@ U.S. Const. amend. V. Bealls relies on *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998). In *Eastern Enterprises*, the United States Supreme Court held that a provision of the Coal Act,[6] Awhich establishe[d] a mechanism for funding health care benefits for retirees from the coal industry and their dependants@was an unconstitutional taking, primarily because of the Coal Act=s Asevere retroactive liability on a limited class of parties that could not have anticipated the liability.@ *Id.* at 504, 529. We do not agree that such reasoning applies to the case before us, which involves a tax, not an economic regulation. The Supreme Court was careful in limiting its decision, observing that the Aextent of Eastern=s retroactive liability is substantial and far reaching,@ and went on to note that the case was distinguishable from retroactive tax provisions that are restricted to Ashort and limited periods.@ *Id.* at 534 (quoting *United States v. Darusmont*, 449 U.S. 292, 296-97 (1981)). Additionally, the tax before us is levied prospectively for the privilege of doing business in the state. Eastern was subjected to a regulation that

_____

[6] *See* 26 U.S.C. '' 9701-9722 (1994 & Supp. II 1996).

**9**

required it to pay lifetime health benefits for employees from decades past. Unlike the tax at issue here, the regulation in *Eastern Enterprises* was not tied to any current business activity. Nor will we hold, as Bealls urges, that

> although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property; that is, a taking of the same in violation of the 5th Amendment; or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion.

*Brushaber v. Union Pac. R.R.*, 240 U.S. 1, 24-25 (1916). We hold that, in enacting the earned-surplus amendments, the legislature acted within the constitutional confines of the Fifth Amendment, and Bealls may not prevail on its federal-takings-clause claim.

Bealls also raised state and federal due process claims in its motion for summary judgment. The due-course-of-law provision in article I, section 19 of the Texas Constitution contains both procedural and substantive components. Tex. Const. art. I, ' 19; *Barshop*, 925 S.W.2d at 632. There has been no complaint of lack of notice and opportunity to be heard. Therefore, the requirements of procedural due process have been met. Because we hold there was no violation of equal taxation, equal protection, retroactivity, or takings provisions, we hold that the requirements of substantive due process were met. We hold that these same principles apply to Bealls= claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, ' 1; *see Norris v State*, 788 S.W.2d 65, 72 (Tex. App.CDallas 1990, pet. ref=d.) (stating that courts have historically equated due-course-of-law provision of Texas Constitution with due-process clause of United States Constitution). We

hold that the implementation of the earned-surplus amendments does not offend the constitutional principles of retroactivity, takings, or due process. We therefore sustain the Comptroller=s second issue.

*Business-Loss Carryovers*

By its third issue, the Comptroller contends that the district court erred in allowing Bealls an apportioned business-loss carryover for report year 1992 as if it were a calendar-year taxpayer, when it is a fiscal-year taxpayer. Business losses are any negative amounts after apportionment and allocation. Tex. Tax Code Ann. ' 171.110(e). They are carried forward to the year succeeding the year they accrue and are offset against that year=s earned surplus. *Id.* They may be carried forward for up to four years or until they are exhausted. *Id*.

The district court apparently determined that calculating Bealls=franchise-tax liability based on earned surplus before January 1, 1991 was unconstitutional because the scheme rendered fiscal-year taxpayers subject to the tax earlier than calendar-year taxpayers would be subject to the same tax. Thus the tax should be calculated beginning at the same time for both calendar- and fiscal-year taxpayers. For calendar-year taxpayers, the initial tax period would be from January 1, 1991 to December 31, 1991. For fiscal-year taxpayers, such as Bealls, the initial tax period would be from January 1, 1991 until the end of the taxpayer=s fiscal year that ended in 1992. It appears that the district court recalculated Bealls=tax based on a period from January 1, 1991 to February 2, 1991 and determined that, during such period, Bealls had an earned surplus of zero and a net operating loss. Therefore, Bealls was entitled to carry the loss over to the following report period.

**11**

We have held that the earned-surplus amendments are constitutional. There is nothing in the tax code indicating that a business-loss carryover should be calculated for a period different from that for which the earned surplus is calculated. *See* Tex. Tax Code Ann. ' 171.110. Just as the franchise tax owed by Bealls for report year 1992 was to be calculated using its February 4, 1990 to February 2, 1991 fiscal-year accounting period, *see id.* ' 171.1532(b), so should the business-loss carryover be calculated using that same period. Bealls does not allege a net operating loss for such period. We hold that the district court erred in determining Bealls was entitled to a business-loss carryover for report year 1992 and sustain the Comptroller=s third issue.

## CONCLUSION

Having sustained all of the Comptroller=s issues, we reverse the district court=s judgment and render judgment that Bealls take nothing by its suit for a refund.

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Reversed and Rendered

Filed: July 26, 2002

Publish