# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00032-CV

**Board of Medical Examiners for the State of Texas and Donald W. Patrick, M.D., J.D., as Executive Director of the Board of Medical Examiners for the State of Texas, Appellants**

**v.**

**Vivian Adaobi O. Nzedu, M.D., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN401077, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

This case involves the application of the statute and board rules that limit the number of times an applicant for a medical license in Texas may attempt to pass qualifying examinations. *See* Tex. Occ. Code Ann. § 155.056 (West 2004). Appellant Texas State Board of Medical Examiners (the Board) denied appellee Dr. Vivian Nzedu's application for a medical license on the basis that she did not pass the United States Medical Licensing Exam (USMLE) within the permissible number of attempts allowed under the Medical Practice Act. *See* Tex. Occ. Code Ann. §§ 151.001–165.160 (West 2004 & Supp. 2006). The Board included in its calculation an examination attempt by Dr. Nzedu taken prior to the effective date of the amendment to the Medical Practice Act that limited the number of permissible attempts to three. The amended statute was effective September 1, 1993, and is sometimes referred to as the "three-attempts

statute." The trial court reversed the Board's decision, granted summary judgment in favor of Dr. Nzedu, and declared that the Board may not count her attempt to pass the USMLE before September 1, 1993, as one of her permitted examination attempts. The trial court awarded Dr. Nzedu $45,000 in attorneys' fees through trial, and made a contingent award of appellate attorneys' fees.

The issue presented is whether counting Dr. Nzedu's pre-September 1, 1993, attempt to pass the USMLE as one of the total attempts allowed pursuant to post-September 1993 law is an unconstitutional retroactive application of section 155.056 of the Medical Practice Act. We conclude that the Board's inclusion of the pre-September 1993 attempt is not an unconstitutional application of section 155.056. Accordingly, we reverse the judgment of the trial court and grant judgment in favor of the Board denying Dr. Nzedu's request for declaratory relief.

**Factual and Procedural Background**

Dr. Nzedu was born and educated in Nigeria. She received her medical training and degree from the University of Nigeria College of Medicine in 1990. In 1993, while living and practicing medicine in Nigeria, Dr. Nzedu applied to take the USMLE. She wanted to join her husband, who was living in Texas,[1] and continue her medical practice in the United States.[2] She attempted Step 2 of the USMLE for the first time on March 30, 1993, but did not pass the

---

[1] Although born in Nigeria, Dr. Nzedu is an American citizen.

[2] An applicant for a medical license in Texas must meet specific eligibility requirements pertaining to training, education, and qualifying examinations. *See* Tex. Occ. Code Ann. § 155.003 (West Supp. 2006). One of the qualifying examinations accepted by the Board is the USMLE, which is divided into three parts referred to as Step 1, Step 2, and Step 3. *See* Tex. Occ. Code Ann. § 155.0511 (West 2004).

2

examination.[3]  After September 1, 1993, when the three-attempts statute was enacted, Dr. Nzedu attempted Step 2 three more times, passing on her third post-September 1993 attempt but fourth overall attempt.  Additionally, after September 1, 1993, Dr. Nzedu took four attempts to pass Step 1 and two attempts to pass Step 3 of the USMLE.  She passed the last of the USMLE Steps on December 31, 1998, but she did not apply for a Texas medical license at that time.  Under the law in effect in 1998 and most of 1999, Dr. Nzedu was not eligible to be licensed because she had taken four attempts to pass Step 1 of the examination (all taken after September 1, 1993), and the statute required an applicant to pass within three attempts.  Under the state of the law at that time, Dr. Nzedu failed to qualify regardless of whether the pre-September 1993 attempt on Step 2 was counted.

The three-attempts statute was amended in 2001 to allow a fourth attempt on one of the three Steps of the USMLE:

> [a]n applicant must pass each part of an examination within three attempts, except that an applicant who has passed all but one part of an examination within three attempts may take the remaining part one additional time.

Act of May 22, 2001, 77th Leg., R.S., ch. 1420, § 14.027, 2001 Tex. Gen Laws 4210, 4353 (codified at Tex. Occ. Code Ann. § 155.056(a)) (amended in 2005).  In light of the 2001 amendment allowing one more attempt on one step of the examination, Dr. Nzedu applied to the Board in August 2002 for a license to practice medicine in Texas.  She took the position that her four attempts on

---

[3]  The statute specifying the number of permissible attempts to pass the examination was amended four times between Dr. Nzedu's initial attempt on the USMLE in March 1993 and the time at which she applied for a medical license in August 2002.

3

Step 1 were now allowed and her first (pre-September 1993) attempt on Step 2 should not be counted. Using this methodology, Dr. Nzedu would have passed the USMLE within the permissible number of attempts.

On November 14, 2002, the Board informed Dr. Nzedu that she was ineligible for licensure because she had required four attempts to pass both Step 1 and Step 2 of the USMLE. In reaching this determination, the Board included Dr. Nzedu's first attempt at Step 2, which occurred before September 1, 1993, in the total number of permissible attempts under the statute. Dr. Nzedu then withdrew her 2002 application for licensure and did not appeal the Board ruling. In April 2004, Dr. Nzedu resubmitted her application for licensure to the Board and simultaneously filed this suit seeking declaratory relief in the district court. Dr. Nzedu challenges the Board's interpretation of section 155.056 of the Medical Practice Act as an unconstitutional retroactive application of the statute.

The parties filed cross-motions for summary judgment. In her motion, Dr. Nzedu asserted that the presumptions in Texas law against retroactive legislation prevent section 155.056 from being interpreted to apply retroactively, and that neither the legislative history nor the language of the section suggest that the legislature intended the statute to apply retroactively. She also asserted that section 155.056 should be interpreted to avoid issues of unconstitutional retroactivity under the Texas and United States constitutions. In its motion, the Board contended that although section 155.056 allowed the Board to look back and consider events that occurred prior to its effective date, the statute is not unconstitutionally retroactive in its application. The Board also contended that section 163.4(a)(6) of the Board's administrative rules required Dr. Nzedu to meet

4

the statutory requirements in effect when she applied for licensure in 2002 and not the requirements in effect when she first attempted Step 2 of the USMLE in March 1993.

The district court granted Dr. Nzedu's motion for summary judgment and held that (1) under section 155.056, Dr. Nzedu's attempts to pass the USMLE before September 1, 1993, may not be counted in the Board's consideration of eligibility for license; (2) the Board may not use Board Rule 163.4(a)(6) retroactively to count attempts to pass the USMLE that occurred prior to September 1, 1993; and (3) Dr. Nzedu meets the eligibility requirements under section 155.003(6) of the Act relating to passing within the statutorily prescribed number of attempts for an examination accepted or administered by the Board.

On appeal, the Board contends that (1) the inclusion of Dr. Nzedu's pre-September 1, 1993, attempt to pass the USMLE as one of the total attempts allowed pursuant to post-September 1993 law does not constitute an unconstitutional retroactive application of section 155.056 of the Medical Practice Act, (2) certain board rules permit the Board to consider Dr. Nzedu's one failed examination attempt prior to September 1, 1993, in their determination of her eligibility for licensure, and (3) the district court abused its discretion by awarding attorneys' fees to Dr. Nzedu.

**Standard of Review**

The material facts are not in dispute. Consequently, the propriety of summary judgment is a question of law. *Westcott Communs., Inc. v. Strayhorn,* 104 S.W.3d 141, 145 (Tex. App.—Austin 2003, pet. denied). We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). When the material facts are not in dispute, both

parties move for summary judgment, and the district court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Texas.,* 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex 2000).

**The Medical Practice Act**

The licensing portion of the Medical Practice Act begins by providing that the Board, at its sole discretion, may issue a license to practice medicine to applicants who meet certain eligibility and examination requirements. *See* Tex. Occ. Code Ann. § 155.002 (West 2004). It also requires an applicant for a medical license to pass a qualifying examination accepted or administered by the Board. *See id*. § 155.003. In addition, Board administrative rule 163.4(a)(6) requires applicants to meet the requirements for licensure that are in place at the time the application is filed with the Board. *See* 22 Tex. Admin. Code § 163.4(a)(6) (2002-2003).

At all times relevant to this appeal, the Medical Practice Act has required that an applicant for a Texas medical license pass each part of a qualifying examination, although the number of attempts allowed has varied. In March 1993, when Dr. Nzedu first attempted Step 2 of the USMLE, the relevant portion of the statute read as follows:

> If any applicant, because of failure to pass the required examination, is refused a license, the applicant, at a time as the board may fix, shall be permitted to take a subsequent examination upon any subject required in the original examination as the board may prescribe . . . .

6

Former Tex. Rev. Civ. Stat. Ann. art. 4495b, § 3.05(c) (amended by Act of May 30, 1993, 73d Leg., R.S., ch. 862, § 14, 1993 Tex. Gen. Laws 3374, 3385) (repealed, codified, and amended at Tex. Occ. Code Ann. § 155.056).

On September 1, 1993, shortly before Dr. Nzedu made her second attempt at a part of the USMLE, the Medical Practice Act was amended to provide that an applicant who fails an examination "shall be permitted to take a subsequent examination not more than two additional times." Act of May 30, 1993, 73d Leg., R.S. ch. 862 § 14, 1993 Tex. Gen. Laws 3374, 3385. This version of the statute was in effect when Dr. Nzedu passed Step 1 and Step 2 in 1995, each on her fourth attempt, and passed Step 3 on her second attempt in 1998. When Dr. Nzedu completed her USMLE testing on December 31, 1998, she did not meet the licensing requirements in effect at that time. Because she had taken Step 1 four times since September 1993, the question of whether the Board could have considered her first attempt on Step 2 was, at the time, moot.

The legislature amended the Act in 1999 to allow for one additional examination attempt on any one of the three steps. The amended statute provided that an applicant could satisfy the examination requirements:

> if, *before, on, or after* the effective date of this act, the applicant passed all but one part of an examination attempt within three attempts and passed the remaining part of the examination on the fourth attempt.

Act of May 20, 1999, 76th Leg., R.S., ch. 874, § 1, 1999 Tex. Gen. Laws 3568, 3570 (effective June 18, 1999) (emphasis added). This version of the statute was only in effect for two and a half months—June 18, 1999 to September 1, 1999. The same legislature, while codifying the Medical

7

Practice Act, enacted a slightly different version of the statute in the codification process that did not permit a fourth attempt and did not include the "before, on, or after" language that replaced the June 18 version on September 1. Act of May 10, 1999, 76th Leg., R.S., ch. 388, §§ 1, 6, 1999 Tex. Gen Laws 1431, 2440. In 2001, the legislature again amended the Act to provide that:

> an applicant must pass each part of an examination within three attempts, except that an applicant who has passed all but one part of an examination within three attempts may take the remaining part one additional time.

Act of May 22, 2001, 77th Leg., R.S., ch. 1420, § 14.027, 2001 Tex. Gen Laws 4210, 4353 (codified at Tex. Occ. Code Ann. § 155.056(a)).[4] This version of the statute was in effect when Dr. Nzedu first submitted her application for a Texas medical license to the Board in 2002 and when she resubmitted her application to the Board in 2004.

The Board interprets section 155.056 of the Medical Practice Act to allow consideration of all of an applicant's examination attempts, both passing and failing, regardless of when the attempts were made, including those prior to September 1, 1993. Dr. Nzedu contends that the Board's interpretation of section 155.056 violates the Texas constitutional prohibition against retroactive laws. *See* Tex. Const. art. I § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.")

---

[4] The current version of the statute, yet again amended in 2005, provides that an applicant "must pass each part of an examination within three attempts." Tex. Occ. Code. Ann. § 155.056(a) (West Supp. 2006).

8

**Retroactivity**

"'While statutory retroactivity has long been disfavored, deciding when a statute operates 'retroactively' is not always a simple or mechanical task.'" *Quick v. City of Austin*, 7 S.W.3d 109, 132 (Tex. 1999) (*quoting Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)). In *Quick,* the Texas Supreme Court took particular note of the following language from the U.S. Supreme Court's opinion in *Landgraf* :

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have "sound . . . instincts," and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Id.* (*quoting Langraf,* 511 U.S. at 269-70) (citations and footnote omitted). Applying these principles, this Court has held that a statute is not retroactive merely because it draws upon antecedent facts for its operation. *General Dynamics Corp. v. Sharp,* 919 S.W.2d 861, 866 (Tex. App.—Austin 1996, writ denied); *see also Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 31 S.W.3d 631, 639 (Tex. App.—Austin 2000), *aff'd*, 92 S.W.3d 434 (Tex. 2002); *Upjohn Co. v. Rylander,* 38 S.W.3d 600, 612 (Tex. App.—Austin 2000, pet. denied); *American Home Assur. v. Texas Dep't of Ins.*, 907 S.W.2d 90, 94 (Tex. App.—Austin 1995, writ denied) (*quoting Lewis v. Fidelity & Deposit Co.*, 292 U.S. 559, 571 (1933)).

This Court's opinion in *General Dynamics Corp. v. Sharp* analyzed a tax-related statute that drew upon antecedent facts for its operation. 919 S.W.2d at 861. In 1984, General Dynamics entered into a seven-year contract with the government to manufacture fighter jets. *Id.* at 864. In formulating its business plan, General Dynamics decided to realize all of its substantial income from the fighter jet contract in the final year of the contract—1991. *Id.* Also in 1991, the legislature amended the method for calculating the franchise tax. Under the amended franchise tax statute, Texas corporations were required to use their prior year's income to assess the amount of franchise tax owed for the privilege of doing business in Texas for the year in which taxes were to be paid. *Id.* at 865. The amended statute was effective for 1992 and had the result of requiring General Dynamics to use its 1991 income to compute its 1992 franchise taxes. *Id.* Since General Dynamics had elected to realize all of its income on the fighter jet contract in 1991, this had a dramatic effect on the franchise taxes General Dynamics owed in 1992. As a result of the change in the franchise tax law, General Dynamics paid approximately $33 million dollars in franchise taxes under protest. *Id.* at 864. General Dynamics then filed suit against the Comptroller to recoup the protested franchise taxes.

On appeal, General Dynamics asserted that the amendment to the franchise tax was unconstitutionally retroactive because it allowed consideration of the amount of income from 1991, the previous calendar year before the amendment was effective, to determine the amount of franchise taxes due in 1992 (the first year the new amendment was in effect). *Id.* at 866. This Court noted that, while the amendment to the franchise tax drew upon antecedent facts for its operation, it did not operate in 1991, the preceding year. *Id.* Instead, the amended franchise tax was levied only after

the effective date of the amendment in 1992 for the privilege of doing business in 1992. *Id.* Therefore, this Court concluded the franchise tax amendment did not violate the Texas Constitution because it operated prospectively and not retroactively.[5] *Id.*

Similarly, section 155.056 is not unconstitutionally retroactive simply because it allows the Board to consider facts that pre-date the three-attempts statute when making a licensure decision. The version of section 155.056 of the Medical Practice Act in effect at the time Dr. Nzedu made her current application for a medical license became effective on September 1, 2001. The limitation on examination attempts under this version of the statute applies only to applications for a medical license filed after that date. The statute does not govern applications made prior to September 1, 2001. The statute does not annul or affect in any way medical licenses granted under previous versions of the statute. Therefore, section 155.056 of the Medical Practice Act affects antecedent conduct or "looks back" before its enactment only in the sense that it permits consideration of examination attempts that took place prior to its effective date.

Dr. Nzedu contends that such a "look back" feature makes the statute unconstitutionally retroactive. We disagree. As outlined in *General Dynamics,* there is a distinction between an unconstitutionally retroactive statute and a prospective statute that merely draws upon

---

[5] In 2002, a department store argued that the application of the same 1991 amendment to the franchise tax law discussed in *General Dynamics* violated the constitutional prohibition against retroactivity. *See Rylander v. Palais Royal,* 81 S.W.3d 909, 915 (Tex. App.—Austin 2002, pet. denied). Like the plaintiff in *General Dynamics,* the department store had calculated the amount of franchise taxes it owed in 1992 based on income it had earned in a previous year, before the effective date of the new franchise tax law. *Id.* Following the reasoning of *General Dynamics,* this Court concluded that "because the franchise tax in our case was levied against [the department store] for the privilege of doing business in 1992, we hold that it was not retroactively applied." *Id.*

11

certain facts or conduct that took place before the statute became law in the process of operating after its effective date. Here, the three-attempts statute only applies to applications submitted while it is in effect, not those submitted prior to its enactment. Merely allowing consideration of pre-statute conduct in the form of counting the number of attempts to pass the USMLE does not amount to unconstitutional retroactivity.

There are numerous examples of how statutes can take into account antecedent facts: college course-work requirements, age parameters, statutory bars based on prior criminal convictions, residence requirements, tax assessments, and others. Taking into account historical data, does not, by itself, make a statute unconstitutionally retroactive. Here, the three-attempts statute simply draws on historical data in assessing the qualifications of applicants applying after the effective date of the statute.

Section 155.056 of the Medical Practice Act also does not violate the constitutional prohibition against retroactivity with respect to Dr. Nzedu because it does not impair or destroy a vested right. Unless vested rights are destroyed or impaired, a law is not invalid even though retroactive in operation. *Corpus Christi People's Baptist Church v. Nueces County Appraisal Dist.*, 904 S.W.2d 621, 626 (Tex. 1995) (*citing State v. Project Principle, Inc.*, 724 S.W.2d 387, 390 (Tex. 1987)). A vested right is a property right, which the constitution protects like any other property. *Subaru, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002) (*citing Middleton v. Texas Power & Light Co.*, 185 S.W. 556, 560 (Tex. 1916)). No one has a vested right in the continuance of present laws in relation to a particular subject. *See id.*

Dr. Nzedu argues that she had a vested right to take Step 2 of the USMLE in March 1993 for practice without that one attempt being charged against her once the limit was put into effect. She argues that if the three-attempts statute is interpreted to allow counting pre-September 1993 attempts, the statute retroactively impairs her vested right to take the USMLE for practice. She asserts that the September 1993 amendment to section 155.056 of the Medical Practice Act violated the expectations upon which she relied in formulating her decision to take Step 2 for practice. This Court considered and rejected a similar reliance argument advanced by the plaintiff in *General Dynamics Corp. v. Sharp. See* 919 S.W.2d at 867. General Dynamics contended that the amendment to the franchise tax violated its vested rights because it had relied on a previous version of the law when deciding to report all of its income from the fighter jet contract in 1991. *Id.* This Court held that "General Dynamics' vested rights have not been impaired because no Texas taxpayer has a vested right in the continuation of a particular measurement method for the franchise tax." *Id.* (*citing Smith v. Davis,* 426 S.W.2d 827, 834 (Tex. 1968)).

The law in effect when Dr. Nzedu first attempted Step 2 of the USMLE in March 1993 provided that "[i]f any applicant, because of a failure to pass the required examination, is refused a license, the applicant . . . shall be permitted to take a subsequent examination upon any subjects required in the original examination as the board may prescribe. . . ." Former Tex. Rev. Civ. Stat. Ann. art. 4495b, § 3.05(c). The parties dispute whether the Board would allow an applicant to retake each part of an examination as many times as necessary to achieve a passing score under this version of the statute. Dr. Nzedu contends that applicants who failed a required examination could retake an unlimited number of subsequent examinations under this version of the

13

statute. The Board contends that applicants who failed a required examination were permitted to retake only one subsequent examination and not multiple, subsequent examinations. We do not address the merits of either Dr. Nzedu's or the Board's construction of the March 1993 statute. For purposes of this appeal, we will assume that Dr. Nzedu believed that the March 1993 version of the statute placed no limitation on examination attempts and that she relied on the continuance of a statute placing no limitation on examination attempts when she decided to take Step 2 of the USMLE for practice in March 1993.

While Dr. Nzedu may have relied on this statute when she decided to take Step 2 of the USMLE for practice, she did not have a vested right in the continuation of this particular procedure for reexamination attempts. Just as General Dynamics did not have a vested right in the continuation of a particular taxing structure, Dr. Nzedu does not have a vested right in the continuation of a particular licensing examination structure. *See Palais Royal,* 81 S.W.3d at 915 (*citing General Dynamics,* 919 S.W.2d at 867). To rule otherwise would mean that licensing examination requirements could not ever be changed for anyone who had at least attempted the examination. Licensing requirements are not immutable, and there can be no reasonable expectation on the part of a potential applicant that the requirements will not change before an application is made.

In addition, her reliance on the state of the law in March 1993 with respect to the number of permissible attempts did not bestow upon her a vested right to take Step 2 of the USMLE free of any consequence. Instead, according to the plain words of the March 1993 statute, an applicant who was "refused a license" would be allowed to take a subsequent examination "at a time

14

as the board may fix, . . . upon any subject required in the original examination as the board may prescribe." Former Tex. Rev. Civ. Stat. Ann. art. 4495b, § 3.05(c). In other words, the Board would consider an applicant's failure on a required exam before allowing that applicant to take a subsequent examination. Therefore, we are not persuaded that Dr. Nzedu had a vested right to take Step 2 of the USMLE in March 1993 and fail the examination with a statutory guarantee that the failure would not ever be counted against her by the Board.

Our willingness to uphold the Board's construction of section 155.056 of the Medical Practice Act is also due to the deference we afford to the decisions of administrative agencies. This Court recognizes that an agency created to centralize expertise in a certain regulatory area is ordinarily "given a large degree of latitude in the methods it uses to accomplish its regulatory function." *Mid-Century Ins. Co. v. Texas Workers' Comp. Comm'n*, 187 S.W.3d 754, 757 (Tex. App.—Austin 2006, no pet.) (*citing Texas Mun. Power Agency v. Public Util. Comm'n*, 150 S.W.3d 579, 586 (Tex. App.—Austin 2004, pet. granted)). Accordingly, the construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) (*citing Stanford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944)).

The Board of Medical Examiners is the agency charged with the enforcement of the Medical Practice Act in connection with its regulation of the practice of medicine in Texas. *See* Tex. Occ. Code Ann. § 152.001 (West Supp. 2006). The Board interprets section 155.056 of the Medical Practice Act to allow consideration of an applicant's examination attempts, both passing and failing,

15

regardless of when the attempts were made. The plain language of section 155.056 is silent as to when the examination attempts may be made. The Board's interpretation of the limitation on examination attempts to include all attempts whenever made does not contradict the plain language of the statute. In addition, the Board's interpretation of the limitation on examination attempts is reasonable because it provides equal treatment to all of an applicant's examination attempts. The Board does not interpret section 155.056 to allow consideration of passes, but not failures, of an examination attempt made prior to the effective date of the statute. The Board also does not require that an applicant who has passed an examination under an older version of section 155.056 retake that examination when the statute is amended. Instead, the Board considers all examination attempts, regardless of whether the attempts resulted in passing or failing scores, and regardless of when those attempts were made, when applying section 155.056 of the Medical Practice Act.

Dr. Nzedu contends that this Court's recent opinion in *Mid-Century Insurance Company v. Texas Workers' Compensation Commission* requires us to conclude that the Board exceeded its statutory power by interpreting section 155.056 of the Medical Practice Act to include all examination attempts whenever made. *See* 187 S.W.3d at 757. We disagree. The issue in *Mid-Century* concerned whether the Texas Workers' Compensation Commission exceeded the scope of its statutory authority by amending an administrative rule to require that certain workers' compensation benefits, called life income benefits, be paid retroactively from the original date of disability. *See id.* To resolve this issue, this Court examined whether the administrative rule: (1) contravened specific statutory language; (2) ran counter to the general objectives of the statute; or (3) imposed additional burdens, conditions, or restrictions in excess of or inconsistent with the

16

relevant statutory provisions. *Id.* at 758 (*citing Office of Pub. Util. Counsel v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied)). This Court found that the administrative rule at issue was inconsistent with other relevant statutes in the Workers' Compensation Act concerning life income benefits. *See id.* at 760-61. Therefore, we held that the Texas Workers' Compensation Commission had exceeded its statutory authority and could not require life income benefits to be paid retroactively from the original date of disability *when such an interpretation was inconsistent with the statutes in question. See id.*

The rationale of *Mid-Century* does not apply to this case. The Board's construction of section 155.056 does not contradict the plain language of the statute and is not inconsistent with any other statute in the Medical Practice Act concerning an applicant's eligibility for a Texas medical license. No other statute in the Medical Practice Act sheds light on which of an applicant's examination attempts may be considered by the Board in its determination of his or her eligibility for a Texas medical license. Instead, the relevant statutes in the Medical Practice Act evidence the Legislature's intent for the Board to determine an applicant's eligibility for a Texas medical license based on certain, strict requirements. For example, the Medical Practice Act contains the following legislative findings:

> (1) the practice of medicine is a privilege and not a natural right of individuals and as a matter of public policy it is necessary to protect the public interest through enactment of this subtitle to regulate the granting of that privilege and its subsequent use and control; and
>
> (2) the board should remain the primary means of licensing, regulating, and disciplining physicians.

Tex. Occ. Code Ann. § 151.003 (West 2004). The Board's consideration of all of an applicant's examination attempts, regardless of when those attempts were made, ensures that the licensed practice of medicine will continue to be a privilege and not a natural right in this state. Only applicants who have passed a qualifying examination within the permissible number of attempts prescribed by section 155.056 will be eligible for a Texas medical license. In light of these legislative findings and the plain language of the statute, we cannot conclude, as we did in *Mid-Century*, that the Board's construction of section 155.056 imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. Therefore, the Board has not exceeded its statutory authority by considering all of an applicant's examination attempts whenever made pursuant to section 155.056 of the Medical Practice Act.

**The Board Rules**

The legislature expressly granted the Board the power to propose and adopt rules to carry out its duties under the Act. *See* Tex. Occ. Code Ann. § 153.001 (West 2004). This Court has consistently held that statutory provisions and agency rules bearing on the same matters must be given a consistent and harmonious meaning. *Grotti v. Tex. State Bd. of Med. Examiners,* 2005 Tex. App. LEXIS 8279 (Tex. App.—Austin 2005, no pet.) (*citing Texas Alcoholic Beverage Comm'n v. Sanchez*, 96 S.W.3d 483, 487 (Tex. App.—Austin 2002, no pet.); *Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 169 (Tex. App.—Austin 1997, no pet.)). In light of our holding that the Board may interpret section 155.056 of the Medical Practice Act to consider Dr. Nzedu's failed examination attempt prior to September 1993, we conclude that the Board may interpret and apply its rules 163.1(7)(I) and 163.4(a)(6) consistently with section 155.056.

18

**Attorneys' fees**

The Board challenges the award of attorneys' fees to Dr. Nzedu. The trial court awarded attorneys' fees to Dr. Nzedu as a prevailing party on her claim for declaratory relief. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997); Tex. Gov't Code Ann. § 2001.038 (West 2000). In a declaratory judgment action, attorneys' fees may be awarded as are "equitable and just." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. Our conclusions regarding the permissible interpretation of section 155.056 of the Medical Practice Act and the Board's rules require that we reverse the district court's judgment granting Dr. Nzedu's relief and that we render judgment for the Board. Accordingly, we also reverse the award of attorneys' fees to Dr. Nzedu in light of the fact that the district court considered the issue of whether attorneys' fees should be awarded in the context of Dr. Nzedu as the prevailing party. We remand for the trial court to determine what award of attorneys' fees, if any, is equitable and just in light of our holdings. *See id*.

We reverse the judgment of the district court and render judgment in favor of the Board denying Dr. Nzedu's request for declaratory relief. We remand the cause for determination of what award of attorneys' fees, if any, is appropriate.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Reversed and Rendered In Part; Reversed and Remanded In Part

Filed: May 4, 2007