# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-05-00494-CV
---

Mid-Century Insurance Company, Appellant

v.

Texas Workers' Compensation Commission, Appellee

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. GN400059, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**
---

## O P I N I O N

In 2001, appellee, the Texas Workers' Compensation Commission (now the Texas Department of Insurance, Division of Workers' Compensation) (the Division),[1] amended its administrative rules to require that lifetime income benefits under workers' compensation (LIBs) be paid retroactively from the original date of disability. *See* 26 Tex. Reg. 10933 (2001) (codified at 28 Tex. Admin. Code § 131.1(b) (2001)). Contending that the amended rule made it liable for LIBs months or even years before some injured employees become eligible to receive the benefits, appellant Mid-Century Insurance Company (Mid-Century) sought a declaration that this rule exceeds the Division's statutory powers and is thus invalid. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004

---

[1] *See* Tex. Lab. Code Ann. § 402.001 (West Supp. 2005).

(West 1997). After a bench trial, the district court rendered judgment against Mid-Century. Because we conclude that the rule exceeds the Division's statutory authority, we will reverse and render judgment for Mid-Century.

## BACKGROUND

**Workers' compensation and lifetime income benefits**

The Texas Workers' Compensation Act (the Act) provides four separate categories of benefits for injured employees: medical, income, death, and burial. *See* Tex. Lab. Code Ann. § 401.011(5) (West 1996). The category of income benefits is itself divided into four parts: (1) temporary income benefits; (2) impairment income benefits; (3) supplemental income benefits; and (4) LIBs. *See generally id.* §§ 408.101-.162 (West 1996 & Supp. 2005). These four types of income benefits are distinct from one another and are discussed in separate subchapters of the Act. *Texas Gen. Indem. Co. v. Texas Workers' Comp. Comm'n*, 36 S.W.3d 635, 640 (Tex. App.—Austin 2003, no pet.).

The legislature provided that LIBs are equal to 75 percent of the employee's average weekly wage, with three-percent annual increases, and are "paid until the death of the employee." Tex. Lab. Code Ann. § 408.161(a) & (c). Such benefits are payable for certain enumerated classes of severe injuries that are permanent in nature, including total and permanent loss of sight in both eyes; loss of both feet, both hands, or one foot and one hand; a spinal injury that results in permanent and complete paralysis of both arms, both legs, or one arm and one leg; and third-degree burns that cover at least 40 percent of the body and require grafting or cover the majority of either both hands

2

or one hand and the face. *Id*. § 408.161(a). The legislature further provided that for purposes of determining eligibility for LIBs, "the total and permanent loss of use of a body part is the loss of that body part." *Id*. § 408.161(b).

**Rule 131.1**

In 2001, the Division amended rule 131.1 to provide, in relevant part, that "[l]ifetime income benefits begin to accrue as provided by the Texas Workers' Compensation Act (the Act), § 408.082, and are payable retroactively from the date of disability." *See* 26 Tex. Reg. 10933 (2001) (codified at 28 Tex. Admin. Code § 131.1(b) (2001)). When making this change, the Division rejected suggestions that LIBs should instead become payable only after the employee actually becomes eligible to receive LIBs. *See* 26 Tex. Reg. 10933, 10934 (2001). With many LIB-qualifying compensable injuries, the date of LIB eligibility and disability are the same, such as when an employee loses an eye and the loss impacts their earning capacity. However, among other comments to the proposed rule was an observation that some compensable injuries may not immediately be severe enough to qualify for LIBs, but would qualify at a later point in time (*e.g.*, an injury to an employee's hands that gradually deteriorates until he or she completely and permanently loses their use).[2] *Id*. It was suggested that the injured employee could draw other forms of workers' compensation income benefits, and even return to work, before the injury worsened into an LIB-

---

[2] The Texas Register, although listing several interested parties that commented on the rule, did not identify which party made each comment. The parties that recommended changes to the rule were the Texas A&M University System, Absolute Dance Studio, and Texas Mutual Insurance Company. *Id*. at 10933.

qualifying condition months or even years later, yet would be entitled to LIBs for the entire period since the original disability. *Id*. The Division declined to modify rule 131.1's provision making LIBs retroactive, although it did state that any previous amount already paid by carrier as other types of income benefits would be redesignated as LIBs and credited against the total LIBs then retroactively due. *Id*.

On January 8, 2004, Mid-Century filed a suit against the Division seeking a declaratory judgment that rule 131.1 be declared invalid to the extent it requires carriers to pay LIBs retroactively from the date of an employee's disability rather than from the date the employee first qualified for those benefits. On June 20, 2005, after a bench trial, the district court rendered judgment in favor of the Division. This appeal followed.

## DISCUSSION

Mid-Century presents one issue on appeal, contending that the Division exceeded its statutory authority in adopting rule 131.1(b). We agree.

**Standard of review**

The Division may exercise only those powers that the legislature confers upon it in clear and express language and cannot exercise what really amounts to a new or additional power for the purpose of administrative expediency. *Texas Natural Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 377 (Tex. 2005); *Public Util. Comm'n v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001). This is because the Division is a creature of the legislature with no inherent authority of its own. *Lakeshore Util. Co.*, 164 S.W.3d at 377. However,

4

"[w]hen the Legislature expressly confers a power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties." *Id*. at 378. An agency created to centralize expertise in a certain regulatory area is ordinarily "given a large degree of latitude in the methods it uses to accomplish its regulatory function." *Texas Mun. Power Agency v. Public Util. Comm'n*, 150 S.W.3d 579, 586 (Tex. App.—Austin 2004, pet. granted). Nonetheless, an agency may not, in the guise of implied powers, exercise what is effectively a new power, or a power contrary to statute, on the theory that such exercise is expedient for the agency's purpose, *City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 441 (Tex. 2002), nor may it contravene specific statutory language, run counter to the general objectives of the statute, or impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *State v. Public Util. Comm'n of Tex.*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied).

In a facial challenge to a rule, we do not consider the merits of the Division's rule on a case-by-case basis. *City of Garland v. Public Util. Comm'n of Tex.,* 165 S.W.3d 814, 819 (Tex. App.—Austin 2005, pet. filed). Rather, we consider whether the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *Public Util. Comm'n of Tex.,* 131 S.W.3d at 321.

Statutory construction presents a question of law that we review *de novo*. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex. 1989). We construe statutory provisions in order to ascertain and effectuate legislative intent. *Texas Dep't of Protective & Regulatory Servs. v. Mega*

*Child Care, Inc.,* 145 S.W.3d 170, 176 (Tex. 2004).  In ascertaining legislative intent, we may consider the evil sought to be remedied, the legislative history, and the consequences of a particular construction.  *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex. 1998).  Further, we read every word, phrase, and expression in a statute as if it were deliberately chosen and presume the words excluded from the statute are done so purposefully.  *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.,* 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied).  In the case of the Workers' Compensation Act, this is not only a presumption: the legislature, in fact, carefully balanced the competing interests of injured employees, employers, and insurance carriers in an attempt to create a viable compensation system, all within constitutional limitations.  *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 521 (Tex. 1995).

Generally, we will accept the words used in a statute according to their ordinary meaning, unless given a specific statutory definition.  *City of Austin*, 92 S.W.3d at 442; s*ee also* Tex. Gov't Code Ann. § 311.011(a) (West 2005) (providing that "words and phrases should be read in context and construed according to the rules of grammar and usage").  Finally, while we have acknowledged that an agency's construction of a statute within its area of expertise should be given serious consideration, this axiom applies only as long as the construction is reasonable and does not contradict the statute's plain language.  *See AT&T Communications of Tex. L.P. v. Southwestern Bell Tel. Co.*, No. 03-0789, slip opinion at 19, 2006 Tex. LEXIS 93, at *33-34 (Tex. Jan. 27, 2006) (stating that an agency is entitled to "some deference" in construing statutes affecting its jurisdiction as long as the construction is reasonable); *Southwestern Life Ins. Co. v. Montemayor*, 24 S.W.3d 581,

585 (Tex. App.—Austin 2000, pet. denied); *see also Texas Gen. Indem. Co. v. Eisler*, 981 S.W.2d 744, 747 n.2 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

**Application**

Labor code section 408.161 addresses LIBs. In its corresponding provisions governing the three other types of income benefits, the legislature stated a specific date on which each class of income benefit would become payable. *See* Tex. Lab. Code Ann. §§ 408.082 & .101 (employee entitled to temporary income benefits beginning on eighth day of disability and continuing until employee reaches maximum medical improvement), .121 (employee entitled to impairment income benefits from day after date employee reaches maximum medical improvement until earlier of employee's death or expiration of period based on percentage of impairment), .142 (employee entitled to supplemental income benefits if he or she meets certain qualifying conditions upon expiration of impairment income benefits). In section 408.161, the legislature stated simply that "lifetime income benefits are paid until the death of the employee *for*" the seven categories of severe, permanent injuries enumerated in that section. *Id*. § 408.161 (emphasis added). While several of these categories include injuries that would obviously and immediately qualify an employee for lifetime income benefits, *id.* § 408.161(a)(1)-(4), (7), others embrace qualifying injurious conditions that could be degenerative or slower-developing. *Id*. § 408.161(a)(5) (spinal injuries resulting in paralysis), (b) (total and permanent loss of use of body part constitutes loss of that body part). We must assume that the legislature contemplated the prospect of these slower-developing but ultimately LIB-qualifying conditions when crafting the statute. *See Gables Realty Ltd. P'ship*, 81 S.W.3d at

7

873 (stating that every word, phrase, and expression in statute should be read as if it were deliberately chosen).

The Division characterizes section 408.161 as "silent" concerning the time at which LIBs become payable. We disagree. The legislature specifically reserved LIBs for seven enumerated categories of injurious conditions that include both immediately qualifying injuries and those evolving or deteriorating over time. It further provided that LIBs are payable "for" those conditions. We conclude that the legislature intended for LIBs to become payable if and when an employee becomes eligible to receive them—not before.

An employee is eligible to receive LIBs on the date that employee suffers from one of the conditions specified in section 408.161. Section 408.161 does not permit payment of LIBs prior to that date. Once an employee is adjudicated eligible to receive LIBs, however, LIBs should be paid retroactively to the date the employee first became eligible.

Nothing elsewhere in the Act suggests a contrary intent. The Division relies chiefly upon section 408.082 of the Act, which provides in relevant part:

ACCRUAL OF RIGHT TO INCOME BENEFITS

(a) Income benefits may not be paid under this subtitle for an injury that does not result in disability for at least one week.

(b) If the disability continues for longer than one week, weekly income benefits begin to accrue on the eighth day after the date of the injury. If the disability does not begin at once after the injury occurs or within eight days of the occurrence but does result subsequently, weekly income benefits accrue on the eighth day after the date on which the disability began.

8

(c) If the disability continues for four weeks or longer after the date it begins, compensation shall be computed from the date the disability begins.

Tex. Lab. Code Ann. § 408.82. We conclude, for two principal reasons, that section 408.082 does not address when LIBs become payable.

First, section 408.082 has been held to apply solely to the temporary income benefits governed by section 408.101, not other types of income benefits. *See Eisler*, 981 S.W.2d at 746-47. The *Eisler* court acknowledged that section 408.082 references "income benefits" (which would literally include not only temporary income benefits, but impairment income benefits, supplemental income benefits, and LIBs) and appears in a subsection titled "Income Benefits in General." *Id.*; *see* Tex. Lab. Code Ann. § 401.011(25) (defining "income benefit" as "a payment made to an employee for a compensable injury" that is not "a medical benefit, death benefit, or burial benefit.").[3] Nonetheless, the court concluded that section 408.082 could not apply to impairment income benefits because section 408.121 provided that an employee's entitlement to those benefits began on the day after the employee reached maximum medical improvement. *Eisler*, 981 S.W.2d at 746-47. In light of section 408.121, the court concluded that "the legislature intended that an injured worker who reaches maximum medical improvement is entitled to impairment income benefits whether or not the injured worker was disabled for at least seven days." *Id.* We find *Eisler*'s reasoning persuasive, and similarly conclude that section 408.161, not section 408.082, establishes the time at which LIBs

_____

[3] The court also acknowledged the axiom that courts should give serious consideration to an agency construction of a statute within the agency's area of expertise. *See Texas Gen. Indem. Co. v. Eisler*, 981 S.W.2d 744, 747 n.2 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

become payable. *See also Garcia*, 893 S.W.2d at 513 (characterizing income benefits as four separate "tiers").

Our conclusion is further supported by the fact that section 408.082 addresses accrual of "income benefits" solely in relation to "disability," *see* Tex. Lab. Code Ann. § 408.082, yet section 408.161 defines LIB eligibility without regard to the existence of a disability. "Disability" is not mentioned in section 408.161, nor do the enumerated injurious conditions in that provision necessarily constitute disabilities in all cases. "Disability" is defined by the Act as "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage." *Id*. § 401.011(16). As both parties acknowledge, whether a condition qualifying an employee for LIBs is also a disability would depend upon the nature of the employee's pre-injury job. These differences indicate that the legislature did not intend for section 408.082 to govern when LIBs become payable.

In addition to relying upon section 408.082, the Division emphasizes its desire to award LIBs retroactively so that employees who do not qualify for such benefits immediately upon injury can receive the benefit of the annual three-percent compensation increases for each intervening year following the injury. *Id*. § 408.161(c). It further notes that we are to construe the Act liberally to effectuate the legislature's evident goal of ensuring compensation for workplace injuries.[4] *See Barchus v. State Farm Fire & Cas. Co.*, 167 S.W.3d 575, 578 (Tex. App.—Houston

---

[4] The Division also confuses the point in time when employees become eligible for LIBs with the time at which such eligibility is administratively or judicially determined to exist. It urges that our conclusion would deprive injured workers of LIBs during the period in which a claim for LIBs is pending in the Department or the courts. As previously explained, once LIB eligibility is

10

[14 th Dist.] 2005, pet. denied). However salutary a policy goal this might be, neither the Division nor this Court can either decrease or increase compensation in a manner inconsistent with the Act. *Fulton v. Associated Indem. Corp.*, 46 S.W.3d 364, 369 (Tex. App.—Austin 2001, pet. denied); *Eisler*, 981 S.W.2d at 746-47.

We sustain Mid-Century's issue on appeal.

## CONCLUSION

Having sustained Mid-Century's issue on appeal, we reverse the judgment of the district court and render judgment that subsection (b) of rule 131.1 is invalid and in excess of the Division's statutory authority.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Reversed and Rendered

Filed:   February 24, 2006

_____

judicially or administratively determined, the employee would be entitled to such benefits from the time at which the injurious condition first entitled the employee for LIBs.