# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00074-CV

---

**Appellant, Texas Department of Insurance, Division of Workers' Compensation// Cross-Appellants, Accident Fund Insurance Company of America and Texas Cotton Ginners' Trust**

**v.**

**Appellees, Accident Fund Insurance Company of America and Texas Cotton Ginners' Trust// Cross-Appellee, Texas Department of Insurance, Division of Workers' Compensation**

---

**FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-18-000341, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This declaratory-judgment action was brought pursuant to Section 2001.038 of the Texas Government Code. Appellees and cross-appellants, Accident Fund Insurance Company of America and Texas Cotton Ginners' Trust, are two insurance carriers that successfully challenged the validity and applicability of an agency rule regarding eligibility for workers' compensation supplemental income benefits (SIB), 28 Texas Administrative Code Section 130.102 (the Rule), which adopted rules pursuant to Texas Labor Code Section 408.142 (the Statute). 28 Tex. Admin. Code §130.102 (2009) (Tex. Dep't of Ins., Div. of Workers' Comp., Eligibility for Supplemental Income Benefits; Amount).[1] The appellant and cross-appellee, the Department of Insurance,

---

[1] All citations to agency rules are to the current version.

Division of Workers' Compensation (the Division) is the state agency designated to oversee the workers' compensation system and that promulgated the challenged rule. Tex. Lab. Code § 402.001. The Division appeals the district court's rulings that Section (d)(1)(D) of the Rule was invalid and that Section (f)'s mention of "work search contacts" is inapplicable to individuals who complete work searches on their own without the involvement of the Texas Workforce Commission (TWC). In their cross-appeal, the carriers challenge various agency materials of the Division as invalid ad hoc rules, which the district court ruled were not ad hoc rules.[2] Accident Fund Insurance Company also challenges on cross-appeal, the district court granting the Division's motion to exclude Accident Fund's expert witness. We will reverse in part and affirm in part the district court's order.

## BACKGROUND

The Workers' Compensation Act was enacted "to balance the competing interests of providing 'compensation for injured employees while protecting employers from the costs of litigation.'" *SeaBright Ins. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015). The system offers "four levels of income benefits: 1) temporary income benefits; 2) impairment income benefits; 3) supplemental income benefits; and 4) lifetime benefits." *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 513 (Tex. 1995). At issue here, are the SIB. SIB are longer term disability compensation that apply after temporary and impairment benefits have ceased, and the injured employee has a remaining impairment rating of 15 percent or more and is unemployed or

---

[2] The Division argues that the carriers' ad hoc rules challenge and excluded-witness challenge are improperly before this Court because a party who does not file a notice of appeal may not be granted more favorable relief than did the trial court except for just cause. *See* Tex. R. App. P. 25.1. However, because the carriers filed timely notices of appeal, we reach the merits of their cross-appeal issues.

underemployed. *See* Tex. Lab. Code § 408.142; *Garcia*, 893 S.W.2d at 513 (Tex. 1995). To be eligible for quarterly SIB payments, an injured worker who meets all other requirements, must "demonstrate an active effort to obtain employment," by either participating in a vocational rehabilitation program or completing the required "work search efforts" for the qualifying period. *Id.* §408.142(a); 28 Tex. Admin. Code §130.102(d) (Eligibility for Supplemental Income Benefits; Amount).

Relevant here are the statutory requirements for satisfactory "work search efforts" to receive SIB payments. Specifically, the parties dispute what the Statute requires of an injured employee that is searching for work on their own—compared to through a vocational rehabilitation program or through the TWC—to be entitled to SIB payments. The carriers are insurance companies who provide coverage of SIB for employers of injured workers. The Division promulgated the challenged rule. *See* 28 Tex. Admin. Code § 130.102(d), (f) (Eligibility for Supplemental Income Benefits; Amount).

The Statute was amended during the 2005 legislative session, and the Section relevant here currently reads:

(a) The commissioner by rule shall adopt compliance standards for supplemental income benefit recipients that require each recipient to demonstrate an active effort to obtain employment. To be eligible to receive supplemental income benefits under this chapter, a recipient must provide evidence satisfactory to the division of:

(1) active participation in a vocational rehabilitation program conducted by the Department of Assistive and Rehabilitative Services or a private vocational rehabilitation provider;

(2) active participation in work search efforts conducted through the Texas Workforce Commission; or

3

(3) active work search efforts documented by job applications submitted by the recipient.

(b) In adopting rules under this section, the commissioner shall:

(1) establish the level of activity that a recipient should have with the Texas Workforce Commission and the Department of Assistive and Rehabilitative Services;

(2) define the number of job applications required to be submitted by a recipient to satisfy the work search requirements; and

(3) consider factors affecting the availability of employment, including recognition of access to employment in rural areas, economic conditions, and other appropriate employment availability factors.

(c) The commissioner may consult with the Texas Workforce Commission, the Department of Assistive and Rehabilitative Services, and other appropriate entities in adopting rules under this section.

Tex. Lab. Code §408.1415.

In 2009 the Division amended the Rule, adding the new work-search-efforts standard to the SIB-eligibility rules:

(d) Work Search Requirements.

(1) An injured employee demonstrates an active effort to obtain employment by meeting at least one or any combination of the following work search requirements each week during the entire qualifying period:

(A) has returned to work in a position which is commensurate with the injured employee's ability to work;

(B) has actively participated in a vocational rehabilitation program as defined in § 130.101 of this title (relating to Definitions);

(C) has actively participated in work search efforts conducted through the Texas Workforce Commission (TWC);

(D) has performed active work search efforts documented by job applications; or

(E) has been unable to perform any type of work in any capacity, has provided a narrative report from a doctor which specifically explains how the injury causes a total inability to work, and no other records show that the injured employee is able to return to work.

(2) An injured employee who has not met at least one of the work search requirements in any week during the qualifying period is not entitled to SIBs unless the injured employee can demonstrate that he or she had reasonable grounds for failing to comply with the work search requirements under this section.

. . . .

(f) Work Search Efforts. As provided in subsection (d)(1)(C) and (D) of this section regarding active participation in work search efforts and active work search efforts, an injured employee shall provide documentation sufficient to establish that he or she has, each week during the qualifying period, made the minimum number of job applications and or work search contacts consistent with the work search contacts established by TWC which are required for unemployment compensation in the injured employee's county of residence pursuant to the TWC Local Workforce Development Board requirements. If the required number of work search contacts changes during a qualifying period, the lesser number of work search contacts shall be the required minimum number of contacts for that period. If residing out of state, the minimum number of work search contacts required will be the number required by the public employment service in accordance with applicable unemployment compensation laws for the injured employee's place of residence.

5

28 Tex. Admin. Code § 130.102(d), (f) (Eligibility for Supplemental Income Benefits; Amount). In the district court, the carriers sought a determination of the validity and applicability of the Rule as well as alleged ad hoc rules on the same topic. All parties filed motions for summary judgment. The carriers argued that the statute on its face limits the types of work-search efforts that may be conducted by an injured worker to entitle them to receipt of SIB payments to three—and only three—pathways: (1) active participation in a vocational rehabilitation program; (2) work-search efforts through TWC; or (3) job applications submitted by the recipient. They further argued that the discretion given to the Division in the Statute Section (b) is limited to determining the number of actions required to satisfy eligibility and did not give the Division any discretion to modify the three types of activity that may qualify.

The carriers' challenges to the Rule focused on the Rule Sections (d)(1)(D), and (f). Specifically, the carriers argued that the Rule Section (d)(1)(D) is invalid because the exclusion of "submitted by the recipient" from the end of "active work search efforts documented by job applications" in the Rule compared to the Statute, allows for job seekers searching independently outside of TWC to count any "work search contact,"—an umbrella term used by TWC to refer to a list of activities that count towards eligibility for unemployment compensation benefits,—as a "work search effort," which is the term used in the Statute, without having to document with job applications as the legislature intended to require. *Compare* 40 Tex. Admin. Code § 815.28(b)(4) (2004) (Tex. Workforce Comm'n, Work Search Requirements), *with* Tex. Lab. Code § 408.1415(a)(3), *and* 28 Tex. Admin. Code § 130.102(d)(1)(D) (Eligibility for Supplemental Income Benefits; Amount). They also argued that the Rule Section (f) authorizes activities other than "job applications" to count as "work search efforts" by conflating "job applications" with the broader term "work-search contacts" through the following Rule language: "made the minimum

6

number of job applications and or work search contacts consistent with the work search contacts established by TWC." 28 Tex. Admin. Code § 130.102(f) (Eligibility for Supplemental Income Benefits; Amount).

The Division argued that: (1) the statute when read as a whole does not limit job-search activities to only three categories but rather gave the Division broad discretion to consider various market factors in setting job-search criteria; and (2) the Division has the discretion to define what a "job application" is and defining it as a "work search contact" under the definition used by TWC is consistent with the Statute's direction in Sections (b)(3), and (c), for the Division to consider various factors in adopting rules under the statute through consultation with TWC. The district court ordered:

1. 28 Tex. Admin. Code §130.102(d)(1)(D) is invalid because it authorizes a fourth method of showing entitlement to Supplemental Income Benefits which conflicts with Labor Code §408.1415(a)(3);

2. Defendant is permanently enjoined from applying this invalid rule.

3. The language in 28 Tex. Admin. Code §130.102(f) pertaining to making "work search contacts" is not applicable to a claimant that is not participating in work search efforts through the Texas Workforce Commission; and

4. Defendant is permanently enjoined from applying the language in 28 Tex. Admin. Code §130.102(f) pertaining to making "work search contacts" to a claimant that is not participating in work search efforts through the Texas Workforce Commission.

The carriers also challenged the Division's preamble to Rule 130.102, Appeals Panel Decision 10029-s, the Division's Appeals Panel Decision Manual, and the Application for

Supplemental Income Benefits as containing invalid ad hoc rules. Specifically, the carriers argued that these materials contained ad hoc rules because they created a fourth pathway to receive SIB payments in which an injured employee may complete a wider category of "work search contacts" without being required to document those efforts with job applications. The Division argued that these were not rules, but rather were restating or explaining a valid rule.

The district court concluded that these materials were not ad hoc rules but rather part of the Division's "adjudicative duties." The district court noted that the Division could no longer rely on these materials to support decisions that conflict with its ruling and that the Division would likely need to make revisions to the preamble, the manual, and the application.

Additionally, the district court granted the Division's motion to exclude Accident Fund's expert witness—which Accident Fund argues was an abuse of the district court's discretion. This appeal followed.

## DISCUSSION

The Division alleges that the district court erred in ruling that the Rule Section (d)(1)(D) is invalid and Subsection (f)'s "work search contact" language is not applicable to a claimant not participating in work-search efforts through TWC. The carriers on cross-appeal challenge the district court's ruling that the challenged agency materials were not ad hoc rules. Accident Fund also challenges on cross appeal the district court granting the Division's motion to exclude its expert witness.

**VALIDITY AND APPLICABILITY OF RULE 130.102**

We review the district court's summary-judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Statutory construction is a question

8

of law that we also review de novo. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). We construe statutory provisions to ascertain and effectuate legislative intent. *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004). "To do this, we look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results." *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). When a statute's language is clear and unambiguous "the statute's plain language most reliably reveals the legislature's intent." *Texas Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018). Further, we "read every word, phrase, and expression in a statute as if it were deliberately chosen, and presume the words excluded from the statute are done so purposefully." *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). For facial challenges to a rule, we do not consider the merits of the rule on a case-by-case basis. *Mid-Century Ins. v. Texas Workers' Comp. Comm'n*, 187 S.W.3d 754, 758 (Tex. App.—Austin 2006, no pet.). "Rather, we consider whether the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Id.* An agency's construction of a statute that is within its area of expertise should be given serious consideration as long as the construction is both reasonable and does not contradict the plain language of the statute. *Id.* The parties challenging the rule have the burden of proving it is invalid. *Texas State Bd. of Exam'rs of Marriage & Family Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017).

**VALIDITY OF RULE 130.102(D)(1)(D)**

The district court ruled that Section (d)(1)(D) of the Rule is invalid because "it authorizes a fourth method of showing entitlement to Supplemental Income Benefits which conflicts with Tex. Lab. Code §408.1415(a)(3)." The carriers argued below—and continue to argue in support of the district court's ruling—that the Statute authorizes three pathways of showing eligibility for the work-search requirement for SIB payments: (1) active participation in a vocational rehabilitation program under Section (a)(1); (2) active participation in work-search efforts conducted through TWC under Section (a)(2); and (3) active work-search efforts documented by job applications submitted by the recipient under Section (a)(3). They argue that the Division has created a fourth way of qualifying for benefits by not requiring the submission of any job applications but rather only requiring individuals searching on their own to make "work search contacts." They also argue that a "job application" is limited to a writing on paper or online that conveys information to an employer about the individual. The carriers' facial challenge to Rule Section (d)(1)(D) alleges that the exclusion of the statutory language "submitted by the recipient" from the Rule's language following "active work search efforts documented by job applications" authorizes this alleged fourth pathway.

The Division argues on appeal that the carriers' rule challenge is rooted in an overly restrictive construction of Statute Section 408.1415(a)(3) and a disregard for the broad discretion that the Statute vested in the Commissioner to create rules to implement the new work-search compliance standards. Specifically, the Division argues that after consultation with TWC and considering the appropriate employment availability factors as directed by Statute Sections (b)(3) and (c), the amendments to the challenged Rule allow for injured workers to request and apply for jobs in a variety of ways, including in person, over the phone, or submitting copies of written

10

physical or online forms, and documenting these applications for employment on the Application for Supplemental Income Benefits. The Division argues that limiting "job applications" as narrowly as the carriers' definition would run counter to the general objectives of the statute because it would exclude job markets in certain areas which do not typically require a formal written form for applying for employment.

As a state agency, the Division may only exercise powers that the Legislature confers upon it in clear and express language and cannot exercise what amounts to a new or additional power for the purpose of administrative expediency. *Texas Nat. Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 377 (Tex. 2005). This is because the Division is a creature of the legislature with no inherent authority of its own. *Id.* However, "[w]hen the Legislature expressly confers a power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties." *Id.* at 378.

The Division has been given the express power to oversee the workers' compensation system. Tex. Lab. Code § 402.001. Regarding SIB eligibility under the "work search efforts" standard, an independent job seeker must "provide evidence satisfactory to the division of . . . active work search efforts documented by job applications submitted by the recipient." *Id.* § 408.1415(a)(3). Thus, the legislature conferred some power on the Division to determine "satisfactory evidence." *Id.* The legislature explicitly mandated that the Division adopt rules that:

> (1) establish the level of activity that a recipient should have with the Texas Workforce Commission and the Department of Assistive and Rehabilitative Services;

11

(2) define the number of job applications required to be submitted by a recipient to satisfy the work search requirements; and

(3) consider factors affecting the availability of employment, including recognition of access to employment in rural areas, economic conditions, and other appropriate employment availability factors.

*Id.* § 408.1415(b). The Statute does not limit the Division's rulemaking under the Statute to only these three objectives, but it requires that the three objectives be met when the Division adopts new rules under the Statute. *Id.* The Division is also expressly allowed but not required to consult with the "Texas Workforce Commission, the Department of Assistive and Rehabilitative Services, and other appropriate entities in adopting rules under this section." *Id.* § 408.1415(c).

Rule Section (d)(1)(D) tracks the language of Statute Section (a)(3), stating "active work search efforts documented by job applications," but does not include the words "submitted by the recipient," as does the Statute. *Compare* 28 Tex. Admin. Code § 130.102(d)(1)(D) (Eligibility for Supplemental Income Benefits; Amount), *with* Tex. Lab. Code § 408.1415(a)(3). We agree with the carriers that the statute unambiguously creates three categories of "work search efforts" that an injured employee may engage in, in order to satisfy the "work search efforts" requirement: (1) active participation in a vocational rehabilitation program; (2) work-search efforts through TWC; or (3) work-search efforts done outside of TWC participation by an independent job seeker that must be documented by job applications submitted by the recipient. Tex. Lab. Code § 408.1415(a). The differing language used in Sections (a)(2) and (a)(3) unambiguously demonstrates that the legislature set different standards for work-search efforts, depending on whether they were done with or without the involvement of TWC. Thus, injured employees

12

completing job searches outside of a vocational rehabilitation program and TWC must document their work-search efforts through job applications submitted by the applicant.

The crux of the issue before us is whether the exclusion of "submitted by the recipient" in Rule Section (d)(1)(D) creates a definition of "job application" that: (1) contravenes the specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Mid-Century Ins.*, 187 S.W.3d at 758. For the following reasons, we conclude it does not.

To determine the validity of Rule Section (d)(1)(D), we first determine if the Rule contravenes specific statutory language. *See id.* The carriers argue that as a compound word "job application" means, "a letter or form containing details of your qualifications, skills, experience, etc. that you send to an organization when you are applying for a job with them." *Job application*, *Cambridge Dictionary* (2023), https://dictionary.cambridge.org/us/dictionary/english/job-application. The Division argues that the words "job" and "application" have multiple meanings that when considered as a whole define "job applications" as "any request for employment, including requests made orally, either in person or over the phone." Specifically, the Division argues that "job" can mean "a regular, remunerative position;" "a specific role, duty, or function;" and "something that has to be done: a task." *Job*, *Merriam-Webster Dictionary* (2023), www.merriam-webster.com/dictionary/job. The Division also argues that "application" can mean: "a request, as for a job," and "a written statement of one's qualifications for employment or admission," *The American Heritage Dictionary Of The English Language* 63 (1981); "the act of requesting;" "a written or spoken request or appeal for employment, admission, help, funds, etc.;" "a form to be filled out by an applicant, as for a job or a driver's license," *Dictionary.com*,

13

www.dictionary.com/browse/application; and (c) "the act of applying;" "request, petition;" and "a form used in making a request," *Application*, *Merriam-Webster Dictionary* (2023), www.merriam-webster.com/dictionary/application. These definitions help establish the outer boundaries of what "job applications" could or could not mean. *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 183–84 (Tex. 2022) (quoting Philip A. Rubin, *War of the Words: How Courts Can Use Dictionaries in Accordance with Textualist Principles*, 60 Duke L.J. 167, 191 (2010) ("[D]ictionaries . . . should be used only to say what a word could mean, not what it must mean— they can only establish outer boundaries.")).

The parties frame the validity challenge as relying on the correct meaning of the term "job application." However, because "job application" is a term used in the Statute, the definition of "job application" is only relevant in this facial rule challenge to Section (d)(1)(D) to the extent that the difference between excluding and including the modifying phrase, "submitted by the recipient," changes the common meaning of "job applications" or otherwise invalidates the statute on its face. The common meaning of "submitted" is: "to present or propose to another for review, consideration, or decision." *Submitted*, *Merriam-Webster Dictionary* (2023), https://www.merriam-webster.com/dictionary/submitted. Both sets of definitions provided by the parties describe things that may be reviewed, considered, or decided upon. The exclusion of "submitted" does not facially change the use of "job application" in the Rule. Neither party's definition of job application is made more or less valid by the inclusion or exclusion of the words "submitted by the applicant." The carriers have not shown that the Rule contravenes specific statutory language. *See Mid-Century Ins.*, 187 S.W.3d at 758.

The carriers' true complaint is that the Division is applying the Rule to situations in which the documented evidence does not constitute a "job application." However, fact-specific

14

applications of a rule to specific cases are not properly challenged through a facial rule challenge. *Id.* ("In a facial challenge to a rule, we do not consider the merits of the Division's rule on a case-by-case basis."). Whether the Rule is applicable, i.e., capable of being applied, to a specific situation may be challenged in a Section 2001.038 rule challenge, but whether the Division is correctly applying the Rule in a specific situation may not be challenged. Tex. Gov't Code § 2001.038(a); *LMV-AL Ventures, LLC v. Texas Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 124 (Tex. App.—Austin 2017, pet. denied). If, as the carriers argue, the Division's application of the Rule is incorrect because it allowed something other than "job applications" to count as a "work search effort" for someone searching on their own, then that argument presents an application challenge that does not contest the facial validity or applicability of the Rule itself. Tex. Gov't Code § 2001.038(a); *LMV-AL Ventures, LLC*, 520 S.W.3d at 124. No party argues that the wrong rule is being applied to these situations, but rather that the Rule is being applied incorrectly in some situations. As written, the Rule applies to applicants searching independently who must document their work search through job applications. Whether a specific way of requesting employment constitutes a "job application" is a fact-specific question arising in some situations, and thus it is not properly before us. Tex. Gov't Code § 2001.038(a); *LMV-AL Ventures, LLC*, 520 S.W.3d at 124.

The carriers also argue that Rule Section (d)(1)(D) is invalid because it defines "job applications" as "work search contacts" under the definition created by TWC. However, this argument conflates their validity challenges to (d)(1)(D) and (f) and their ad-hoc rulemaking challenge to some agency materials. Section (d)(1)(D) does not mention "work search contacts." Rather it mentions "work search efforts," an umbrella term used in the Statute. To the extent that any of the challenged division materials or Rule Subsection (f) invalidly defines job applications

15

as work-search contacts, that is relevant to the validity and applicability challenges to those texts, which are addressed below, but does not invalidate Section (d)(1)(D). Thus, Rule Section (d)(1)(D) does not contravene the specific statutory language.

Next, we consider whether the Rule runs counter to the general objectives of the Statute, which we discern from the plain text of the Statute. *See Texas State Bd. of Exam's of Marriage & Family Therapists*, 511 S.W.3d at 33. The Division argues that the Statute's objective is to improve return-to-work outcomes for employees interacting with the workers' compensation system. The carriers argue that the Statute's objective is "to improve access to effective TWC return to work programs and remove ambiguity." Specifically, they argue that the Sunset Commission's report regarding the former system shows that the legislative intent was to encourage claimants to go through vocational programs or TWC rather than to search for jobs on their own. However, the source of the general objective of the Statute must come from the text of the statute. *See Texas State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 33 ("We discern those 'general objectives' from the plain text of the statutes that grant or limit the agency's authority"); *Texas Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 135 (Tex. 2018) (noting courts do not rely on extrinsic aids such as legislative history for unambiguous statutes).

The Workers' Compensation Act was enacted "to balance the competing interests of providing 'compensation for injured employees while protecting employers from the costs of litigation.'" *SeaBright Ins. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015) (quoting *In re Poly-Am., L.P.*, 262 S.W.3d 337, 350 (Tex. 2008). The SIB Statute facially encourages unemployed or underemployed injured individuals in the Workers' Compensation System to seek employment by supporting that search through SIB payments. *See* Tex. Lab. Code § 408.1415. The requirements

16

for what qualifies as a satisfactory work search effort to qualify for SIB payments, demonstrate that the Statue's purpose is to increase the number of individuals in the Workers' Compensation System that successful return to work. However, the Statute does not on its face show a preference for employees to do so through a vocational rehabilitation program, through TWC, or through their own job searches. *See id.*

The Division's determination that a job application includes asking for a job by phone or in person rather than only by a written document is not counter to that objective. Rather, the Division argues that this broader definition is used based on consideration of employment availability factors through their consultation with TWC. *See* Tex. Lab. Code § 408.1415 (b)(3), (c). For example, the Division considers that some industries regularly do not require form documents for applying for employment. The Division argues that its wider definition allows for employees to apply in the manner in which an employer prefers and is most likely to result in employment. Further, the agency argues that the carriers' more restrictive definition of a job application would run counter to the general objectives of the Statute because it would discourage job seekers from applying for jobs that do not require a written form to apply. The Division's determination does not run counter to the general objectives of the Statute.

Next, we consider whether the Rule imposes additional burdens in excess of or inconsistent with the statute. *See Mid-Century Ins.*, 187 S.W.3d at 758. For the same reasons that the Rule does not contravene the statutory language nor run counter to the general objectives of the statute, it also does not impose additional burdens in excess of or inconsistent with the Statute. The Statute creates guidelines for meeting the requirement of searching for work that entitles injured employees to SIB payments, and it directs the Division to create rules to further implement the guidelines. Defining "job applications" to include ways of applying for a job other than

17

through a written form does not create any additional burdens in excess of or inconsistent with the Statute.

The Division's exclusion of "submitted by the recipient" from the Rule does not make the Rule invalid, because it does not create a rule that is contrary to the statute, that runs counter to the statute's objectives, or that imposes additional burdens in excess of or inconsistent with the statute. *See id.*; *see also* Tex. Lab. Code § 408.1415; 28 Tex. Admin. Code § 130.102 (Eligibility for Supplemental Income Benefits; Amount). Thus, Rule 103.102(d)(1)(D) is not facially invalid. *See* 28 Tex. Admin. Code § 130.102 (Eligibility for Supplemental Income Benefits; Amount). We reverse the district court's ruling to the contrary.

**APPLICABILITY CHALLENGE TO RULE 130.102(F)**

The carriers asserted below, and the trial court agreed, that Rule Section (f)'s mention of "work search contacts" is invalid and inapplicable when applied to individuals seeking employment on their own. The Division argues that it included Subsection (f) in response to the Statute's explicit direction to the Division to "establish the level of activity that a recipient should have with the Texas Workforce Commission and the Department of Assistive and Rehabilitative Services," Section 408.1415(b)(1), and "define the number of job applications required to be submitted by a recipient to satisfy the work search requirements," Section 408.1415(b)(2). Rule Section (f) reads:

> (f) Work Search Efforts. As provided in subsection (d)(1)(C) and (D) of this section regarding active participation in work search efforts and active work search efforts, an injured employee shall provide documentation sufficient to establish that he or she has, each week during the qualifying period, made the minimum number of job applications and[/]or work search contacts consistent with the work search contacts established by TWC which are required for unemployment compensation in the injured employee's county of residence pursuant to the TWC Local Workforce

18

Development Board requirements. If the required number of work search contacts changes during a qualifying period, the lesser number of work search contacts shall be the required minimum number of contacts for that period. If residing out of state, the minimum number of work search contacts required will be the number required by the public employment service in accordance with applicable unemployment compensation laws for the injured employee's place of residence.

28 Tex. Admin. Code § 130.102(f) (Eligibility for Supplemental Income Benefits; Amount). Thus, Rule Section (f) requires the number of job applications—combined with the number of work-search contacts—to meet the quantitative requirements set by TWC for unemployment-compensation benefits. The carriers do not challenge the Division's authority to set this numerical requirement or to use TWC's system for determining how many job applications must be made by an individual job seeker or how many work-search contacts must be made by job seekers working with TWC.

Rather, the crux of the dispute over Rule Section (f) is whether the section impermissibly allows an injured employee searching for work on their own, outside of TWC, to count "work search contacts," as defined by TWC, as "work search efforts" without having to document those work-search efforts with job applications as required by the Statute. *Id.* Specifically, the carriers argue that the inclusion of "and[/]or" in between "job applications" and "work search contacts" creates a fourth pathway for entitlement to SIB payments that is not authorized by the Statute by conflating "work search contacts" and "job applications."

The Division makes two significantly different arguments regarding this Section. We first address its argument that "work search contacts," as defined by TWC, is consistent with the legislature's intended definition of "job applications." TWC's "work search contacts" include:

(A) utilizing employment resources available at Workforce Centers that directly lead to obtaining employment, such as:

(i) using local labor market information;

(ii) identifying skills the claimant possesses that are consistent with targeted or demand occupations in the local workforce development area;

(iii) attending job search seminars, or other employment workshops that offer instruction in developing effective work search or interviewing techniques;

(iv) obtaining job postings and seeking employment for suitable positions needed by local employers;

(B) attending job search seminars, job clubs, or other employment workshops that offer instruction in improving individuals' skills for finding and obtaining employment;

(C) interviewing with potential employers, in-person or by telephone;

(D) registering for work with a private employment agency, placement facility of a school, or college or university if one is available to the claimant in his or her occupation or profession; and

(E) other work search activities as may be provided in Agency guidelines.

40 Tex. Admin. Code § 815.28 (Work Search Requirements).

We look to the definitions of "job application" proffered by the parties and supported by dictionary definitions to establish the outer boundaries of the plain meaning of "job application." *Pridgen*, 653 S.W.3d at 183. These outer bounds are carriers' definition of, "a letter

or form containing details of your qualifications, skills, experience, etc. that you send to an organization when you are applying for a job with them," and the Division's definition of "any request for employment." Based on these boundaries, we agree with the carriers that "work-search contacts," as defined by TWC, include some work-search efforts that do not fall within a reasonable definition of "job application." While the statute's explicit allowance of consultation with TWC encompasses defining the number of job applications consistent with work-search contacts, it does not give the agency the discretion to include work-search contacts that are not reasonably "job applications." *See* Tex. Lab. Code § 408.1415(c); *Mid-Century Ins.*, 187 S.W.3d at 758.

However, the Division also argues that Rule Section (f) does not act to conflate "job applications" with "work search contacts" but rather the first sentence—"[a]s provided in subsection (d)(1)(C) and (D) of this section regarding active participation in work search efforts"— informs and restricts the rest of the section. Specifically, the Division argues that the mention of job applications relates back to Section (d)(1)(D) and requires "work search efforts documented by job applications," and the reference to "work search contacts" relates back to Section (d)(1)(C) and only applies to searches done through TWC. It further argues that "consistent with the work search contacts established by TWC which are required for unemployment compensation in the injured employee's county of residence pursuant to the TWC Local Workforce Development Board requirements," modifies the word "number," and thus only sets a numerical standard. This interpretation of the Rule (f) is a reasonable interpretation of the language of the rule, is consistent with the Statute's language, is consistent with the general objectives of the Statute, does not impose additional burdens, is consistent with the carriers' argument, and is consistent with the district court's ruling on this issue. *See* Tex. Lab. Code § 408.1415(c); *Mid-Century Ins.*, 187 S.W.3d at

21

758. To the extent Section (f) is applying "work search contacts" to "job applications" solely for the purpose of setting a numerical standard, it is consistent with the Statute and thus valid.

However, Rule Section (f) does not apply to include all work-search contacts within the definition of "job application," or to allow work-search efforts that are not documented by written or oral job applications to count towards the satisfactory evidence of an active work-search effort for job seekers searching on their own. Thus, we affirm the district court's ruling on this issue.[3]

## AD HOC RULES CHALLENGE

The carriers challenge on cross-appeal, the district court's ruling that the Division's preamble to the Rule, Appeals Panel Decision 10029-s, Appeals Panel Decision Manual, and the Application for Supplemental Income Benefits do not contain invalid ad hoc rules. Specifically, the carriers argue that these materials contain ad hoc rules because they create a fourth pathway to receive SIB payments in which an injured employee may complete a wider category of "work search efforts" without being required to document those efforts with job applications. The Division concedes that with the exception of the appeals-panel decision, the other three challenged materials—the Rule's preamble, the manual, and the SIBs application—include statements of general applicability. The Division also concedes that all challenged materials concern more than the internal management and organization of the Division. However, the Division argues that none

---

[3] Texas Cotton Ginners' Trust raised on cross-appeal an issue that would only become relevant in this appeal if we reversed the district court's finding that "work search contacts" do not qualitatively apply to individuals conducting independent work search efforts. Specifically, they argued that if "work search contacts" qualitatively—compared to quantitatively—applied to job seekers searching independently then this Court should enter declaratory judgment that all qualitative requirements for "work search contacts" must be enforced by the Division. Because we affirm the district court on this issue, we do not address this alternative argument.

of the challenged materials include ad hoc rules because the Rule's preamble, the manual, and APD 10029-S do not implement, interpret, or apply law or policy in a way that amounts to an amendment or repeal of an existing Division rule because those statements merely restate Rule 130.102(f); APD 10029-S does not include any statement of general applicability because it resolved a contested case involving only the rights of the parties to that case; and the challenge to the SIB application is not a statement because it is based on an omission of language.

Construction of administrative rules, like statutes, is a question of law that we review de novo under traditional principles of statutory construction. *Teladoc, Inc. v. Tex. Med. Bd.*, 453 S.W.3d 606, 614 (Tex. App.—Austin 2014, pet. denied). It is undisputed that the Division did not promulgate any of the challenged materials in accordance with the APA's notice-and-comment rulemaking requirements. *See* Tex. Gov't Code §§ 2001.023–.030. Thus, we need only determine whether any of the challenged materials contain a "rule" within the meaning established by the APA. *See El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008) ("When an agency promulgates a rule without complying with the proper rule-making procedures, the rule is invalid."). A "rule" under the APA:

> (A) means a state agency statement of general applicability that:
>
>> (i) implements, interprets, or prescribes law or policy; or
>>
>> (ii) describes the procedure or practice requirements of a
>> state agency;
>
> (B) includes the amendment or repeal of a prior rule; and

23

>> (C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

Tex. Gov't Code Ann. § 2001.003(6).

Agency pronouncements that advise third parties about applicable legal requirements may be interpretations of law that constitute "rules" under the APA. *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 703 (Tex. App.—Austin 2011, no pet.). However, "an informal agency statement that does no more than restate its own formally promulgated rules would not in itself be a 'rule.'" *Id.* We will consider whether the challenged materials include an invalid "rule" under the APA one source material at a time.

### *PREAMBLE*

The carriers allege that the Rule's preamble includes two sets of comment and Division response that include an ad hoc rule:

>> Comment: Commenters suggest expanding the subsection by amending it to show that the active work search applications must be submitted to an employer that has a position currently open, will have one open in the near future, or is hiring during the qualifying period.

>> Agency Response: The Division disagrees. In establishing what may be considered a job application, the Commissioner has determined it is appropriate to require compliance consistent with that of TWC requirements regarding work search contacts. TWC has implemented rules and provides guidance that describes the type of activities that may constitute a work search contact.

>> Comment: Commenter requests clarification of the phrase "has performed active work search efforts documented by job applications" that requires an injured employee, who engages in a job search outside of TWC in an effort to establish SIBs entitlement, to document those work search efforts by submitting completed

24

job applications and that other job search activities will not be sufficient to establish SIBs entitlement.

Agency Response: This Division clarifies that, as set forth in adopted § 130.102(f), "work search efforts" encompasses both job applications and work search contacts as described by the TWC rules.

34 Tex. Reg. 2145 (2009) (to be codified at 28 Tex. Admin. Code § 130.102) (proposed October 3, 2008) (Tex. Dep't of Ins., Div. of Workers' Comp.). As discussed above, the Statute requires an injured employee searching on their own to document their search with job applications and the wider term of "work search contacts" does not apply qualitatively to that situation. The following language in the preamble expands Rule (d)(1)(D) by defining a "job application" as "work search contacts": "In establishing what may be considered a job application, the Commissioner has determined it is appropriate to require compliance consistent with that of TWC requirements regarding work search contacts." *Id.* When asked what a "job application" is, the Division responded that it is a "work search contact."

The second challenged response correctly states that both job applications and work-search contacts are under the umbrella term "work search efforts." As discussed above, work-search contacts not documented by job applications only count as a valid work-search effort for those going through TWC. By including both types of work-search efforts in an answer to a comment that only concerns searches outside of TWC, the Division implies that work-search contacts can qualify as "job applications" for independent job seekers. Although the response does not in isolation expand the properly applied scope of Section (f), in combination with the comment it answers, it implicitly does. This conclusion is further demonstrated by the application of this

comment's language in Appeals Panel decision 100229-s and the Division's Appeals Panel Division Manual, discussed below.

The Division argues that both comments simply restate the language of Rule Section (f). *See* 28 Tex. Admin. Code § 130.102(f) (Eligibility for Supplemental Income Benefits; Amount). However, this argument is similar to the Division's first argument in defense of Section (f) that defining "job applications" as "work search contacts" is consistent with the Statute. *See* Tex. Lab. Code § 408.1415; 28 Tex. Admin. Code § 130.102(f) (Eligibility for Supplemental Income Benefits; Amount). As we discussed above, the Statute does not support defining "job applications" as "work search contacts." *See* Tex. Lab. Code § 408.1415; 40 Tex. Admin. Code § 815.28 (Work Search Requirements). Thus, the preamble's language that interprets the Rule as equating the two terms is a new rule of general applicability that amends Rules (d)(1)(D) and (f). The new rule was not promulgated through the proper process and is thus invalid. *See El Paso Hosp. Dist.*, 247 S.W.3d at 715; Tex. Gov't Code § 2001.003(6).

### *APD 100229-S*

In APD 100229-s, the hearing officer had found that the claimant made 65 work-search efforts but was not entitled to SIB payments because only five of those included job applications. The appeals panel reversed the hearing officer's denial of benefits based on the Division's interpretation of the Rule included in the preamble that equated job applications with work-search contacts. Appeal No. 100229-s, 2010 WL 1782362, at *3 (Tex. Div. of Worker's Comp. Apr. 30, 2010) ("Although Rule 130.102(d)(1)(D) requires that the injured employee for each week during the entire qualifying period 'performed active work search efforts documented by job applications,' the preamble to Rule 130.102(d)(1)(D) clarifies that 'work search efforts' encompass both job applications and work search contacts described by TWC rules.").

26

The holding of the challenged appeals decision is not a rule for purposes of the APA because, as the Division argues, it is not an agency statement of general applicability because it resolved a "contested case" involving only the rights of the parties to that case, which is distinguishable from a "rule" under the APA. *See* Tex. Gov't Code § 2001.003(1), (6)(a); *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003). Thus, the statements in APD 100229-s are not a "rule" for purposes of the APA.

### *DIVISION'S APPEALS PANEL DECISION MANUAL*

The Division maintains an Appeals Panel Decision Manual. As the manual's introduction establishes, the primary purpose of the manual "is to help the Appeals Panel achieve consistency in its decisions and inform its customers of the legal principles it expects to follow in deciding appeals." Under the manual's subheading, "IE Did Meet Work Search Requirements," is a summary of one appeals decision, which is APD 100229-s. The summary includes a restatement of the holding in APD 100229-s that relies on the invalid rule from the challenged preamble sections. Thus, the challenged section of the manual that interprets the Rule as equating "job applications" and "work search contacts" is a new rule of general applicability that amends the Rules (d)(1)(D) and (f). The new rule was not promulgated through the proper process and is thus invalid. *See* Tex. Gov't Code § 2001.003(6); *El Paso Hosp. Dist.*, 247 S.W.3d at 715.

### *SIB APPLICATION*

The carriers argue that the Application for Supplemental Income Benefits, Form DWC-052, contains an invalid rule because it does not require documentation of an active work search by job applications submitted. The carriers argue that this new rule is demonstrated by there being no place on the form where an applicant can specify whether he is looking for work

through the TWC. The Division argues that this is not a statement but rather an omission of details and thus cannot constitute a rule. *See* Tex. Gov't Code § 2001.003(6)(A).

The application form includes a section for applicants to specify the number of "work search efforts" they completed and a section titled "Notes and Type of Documentation Attached (see instructions)." The form also has the applicant certify that they "have complied with the Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) Work Search Requirements (Texas Lab. Code § 408.1415 and Texas Administrative Code §130.101 and §130.102)." The instructions include the following regarding documenting work-search efforts:

> To Document Work Searches—If you have not returned to work and you are able to work in any capacity, you must look for a job to match your ability to work during each week of the qualifying period. Appropriate documentation includes:
>
> • Work search log attached to DWC Form-052, Application for Supplemental Income Benefits;
>
> • Documentation about any follow-up visits to a potential employer; and/or
>
> • Copies of employment applications or resumes which document your efforts to find a job.

Therefore, although the form does not specify the difference between documenting work-search efforts done through TWC and ones done independently, it cites to the Statute, which as discussed above, unambiguously differentiates between the two situations. Thus, the SIB application form does not contain any statement that equates job applications and work-search contacts. *See* Tex. Gov't Code § 2001.003(6). The application does not contain a rule for purposes of the APA.

In sum, the preamble and the manual do contain invalid rules. We reverse the district court's ruling to the contrary. The Appeals Panel Decision and the SIB application form do not contain rules as defined under the APA. Therefore, we affirm the district court's ruling as to those two documents.

**EXCLUDED EXPERT WITNESS**

Accident Fund Insurance Company challenges on cross-appeal, the district court's grant of the Division's motion to exclude its expert witness. Accident Fund argues that its expert witness would have testified regarding "whether the fourth pathway authorized by the Division is as likely to lead to employment as the three pathways dictated by the Legislature." The Division argues that exclusion was proper and that Accident Fund cannot show that the exclusion was harmful.

We review a trial court's exclusion of expert testimony for abuse of discretion. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). We can only reverse on trial court error if it was harmful, that is, if the error "probably caused the rendition of an improper judgment,'" or "probably prevented the appellant from properly presenting the case to the court of appeals." Tex. R. App. P. 44.1(a); *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 551 (Tex. 2018).

Without deciding whether the exclusion was error, we agree with the Division that the exclusion of the expert testimony was not harmful. *See* Tex. R. App. P. 44.1(a); *Diamond Offshore Servs. Ltd.*, 542 S.W.3d at 551. None of the issues raised required consideration of whether a fourth method of SIB eligibility was as likely to result in employment as the three methods explicitly set forth in the Statute. *See* Tex. Lab. Code § 408.1415.

29

**CONCLUSION**

Because Section 130.102(d)(1)(D) of the Rule is facially valid, we reverse the district court's judgment to the contrary that enjoined the Division from applying that rule. Because job seekers not working with TWC must document their work-search efforts with job applications, the district court's judgment enjoining the Division from applying the term "work search contacts" in Rule Section (f) qualitatively to independent job seekers is affirmed. Because the preamble and the manual do contain invalid rules, we reverse the district court's judgment to the contrary. Because the Appeals Panel Decision and the SIB application form do not contain rules as defined under the APA, we affirm the district court's judgment as to those two documents.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed in Part, Reversed and Rendered in Part

Filed: February 28, 2023

30